IN THE
# SUPREME COURT OF THE STATE OF ARIZONA

SAGUARO HEALING LLC,
*Plaintiff/Appellant*,

*v.*

STATE OF ARIZONA, ET AL.
*Defendants/Appellees*.

No. CV-19-0129-PR
Filed August 20, 2020

Appeal from the Superior Court in Maricopa County
The Honorable John R. Hannah, Jr., Judge
No. CV2017-054686
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals,
Division One
No. 1 CA-CV 18-0242
Filed March 28, 2019
**VACATED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, O.H. Skinner, Solicitor General, Louis Caputo (argued), Aubrey Joy Corcoran, Assistant Attorneys General, Phoenix, Attorneys for the State of Arizona, et al.

Ryan J. Lorenz (argued), Sean M. Carroll, Andrew B. Turk, Christopher T. Curran, Clark Hill PLC, Scottsdale, Attorneys for Saguaro Healing, LLC

JUSTICE BEENE authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, GOULD, LOPEZ, and PELANDER (Retired) joined.* JUSTICE MONTGOMERY concurred in part and dissented in part.

———————————

JUSTICE BEENE, Opinion of the Court:

¶1 We address whether the Arizona Department of Health Services' ("ADHS") interpretation of Arizona Administrative Code R9-17-303, which governs ADHS's allocation of marijuana dispensary registration certificates, violates A.R.S. § 36-2804(C). We conclude § 36-2804(C) requires ADHS to issue at least one dispensary registration certificate in each county with a qualified applicant. Accordingly, we hold that ADHS's interpretation of R9-17-303, which led it to deny a certificate to a qualified applicant from a county without a dispensary, violated the statute.

**BACKGROUND**

¶2 Pursuant to its rulemaking authority, ADHS must enact rules to implement and administer the Arizona Medical Marijuana Act ("AMMA"). *See* A.R.S. §§ 36-136(G), -2803; Ariz. Admin. Code R9-17-301 to -323. Under the AMMA, an individual or entity must apply to ADHS for a dispensary registration certificate before ADHS may approve the individual or entity to operate a dispensary. Ariz. Admin. Code R9-17-304(C)–(D), -305(A). ADHS may only issue a limited number of certificates. § 36-2804(C).

¶3 Each year, ADHS must review existing dispensary certificates to determine if it may issue additional certificates under § 36-2804. *See* Ariz. Admin. Code R9-17-303. Once ADHS determines it can do so, individuals or entities interested in operating a medical marijuana dispensary may apply to ADHS for a dispensary registration certificate. *Id.* at -303, -304. ADHS must initially prioritize the allocation of certificates to counties without a dispensary and then to geographic regions called Community

———————————

* Chief Justice Robert Brutinel has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable John Pelander, Justice of the Arizona Supreme Court (Retired), was designated to sit in this matter.

Health Analysis Areas ("CHAAs") with the most registry identification cards issued to qualifying patients. *Id.* at -303.

**¶4** Here, based on the annual review data collected before May 31, 2016, ADHS performed its priority analysis and determined on June 16, 2016, it could issue new registration certificates. *See id.* at (A). ADHS announced it would accept applications for new certificates between July 18 and July 29, 2016. Because every county had at least one dispensary during the annual review period, ADHS announced it would allocate the registration certificates based on other factors set forth in R9-17-303. *See id.* at (B)(1), (2). Saguaro Healing LLC ("Saguaro") timely applied for a certificate, indicating that its dispensary would be in CHAA 36, located in La Paz County.

**¶5** During the application period, the only dispensary in La Paz County relocated out of the county. However, because the annual review data still reflected a dispensary in La Paz County, ADHS did not consider the vacancy when prioritizing registration certificates.[1] As a result, although Saguaro was the only applicant for La Paz County, and ADHS notified Saguaro that its application was complete and complied with the applicable laws and rules, ADHS did not issue a certificate to Saguaro, and La Paz County was left without a dispensary.

**¶6** Saguaro filed a complaint for special action alleging that ADHS should have prioritized its issuance of registration certificates based on the dispensaries' status sixty days after the application period opened pursuant to R9-17-303. The trial court dismissed the complaint because R9-17-303(B) "does not say when, during the process of issuing new certificates, [ADHS] must determine how certificates will be allocated." It noted that for practicality and fairness, ADHS "decided to determine [prioritization] before the beginning of the application period instead of waiting until the deadline for actually making the allocation."

**¶7** The court of appeals affirmed. *Saguaro Healing LLC v. State*, No. 1 CA-CV 18-0242, 2019 WL 1410627, at *1 ¶ 1 (Ariz. App. Mar. 28, 2019) (mem. decision). We granted review to determine whether ADHS's application of R9-17-303 as interpreted violated § 36-2804(C), an issue of

---

[1] For ADHS to determine the number of dispensaries in a given county, it need only review the interactive CHAA map on ADHS's website. *See Medical Marijuana - Dispenaries - Map Your CHAA*, Arizona Department of Health Services, https://www.azdhs.gov/licensing/medical-marijuana/index.php#dispensary-map-chaa (last visited Aug. 17, 2020).

statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶8        Pursuant to § 36-2804(C):

> [ADHS] may not issue more than one nonprofit medical marijuana dispensary registration certificate for every ten [registered] pharmacies . . . within the state except that the department may issue nonprofit medical marijuana dispensary registration certificates in excess of this limit if necessary to ensure that the department issues at least one nonprofit medical marijuana dispensary registration certificate in each county in which an application has been approved.

¶9        We are asked to decide whether § 36-2804(C) grants ADHS discretion to deny a registration certificate to a county without a dispensary if issuing it would exceed the one-in-ten ratio.[2]

¶10        We interpret statutes and administrative rules de novo, "apply[ing] the same rules in construing both statutes and rules." *Gutierrez v. Indus. Comm'n of Ariz.*, 226 Ariz. 395, 396 ¶ 5 (2011) (citation omitted). We do not defer to the agency's interpretation of a rule or statute. A.R.S. § 12-910(E); *see also Stambaugh v. Killian*, 242 Ariz. 508, 512 ¶ 21 (2017).

## A.

¶11        The State argues § 36-2804(C) "imposes only a maximum—not a *minimum*—number of dispensaries." It asserts that ADHS has discretion to exceed that maximum for a county without a dispensary but that § 36-2804(C) does not require it. The State rests its conclusion on the second use of the word "may" in the statute. We disagree with its interpretation.

¶12        Although "[t]he word 'may,' when used in a statute, usually implies some degree of discretion," this principle "can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." *United States v. Rodgers*, 461

---

[2]        The one-in-ten ratio provides that ADHS "may not issue more than one nonprofit medical marijuana dispensary registration certificate for every ten [registered] pharmacies" operating in Arizona. § 36-2804(C).

U.S. 677, 706 (1983). "Words in statutes should be read in context in determining their meaning." *Stambaugh*, 242 Ariz. at 509 ¶ 7.

¶13        Here, the words "if necessary to ensure" indicate that "may" is not permissive in this context. The dictionary definitions of "necessary" and "ensure" support this conclusion. *See Necessary*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ("[A]bsolutely needed : required."); *Ensure*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ("[T]o make sure, certain, or safe : guarantee."); *see also DBT Yuma, L.L.C. v. Yuma Cty. Airport Auth.*, 238 Ariz. 394, 396 ¶ 9 (2015) ("Absent statutory definitions, courts generally give words their ordinary meaning and may look to dictionary definitions." (internal citation omitted)). Accordingly, although "may" often indicates discretion, here the words "if necessary to ensure" indicate that ADHS is required to issue "at least one . . . certificate in each county in which an application has been approved." § 36-2804(C). In this context, "may" requires ADHS to issue a registration certificate it ordinarily would not be able to issue to "ensure" that there is a medical marijuana dispensary in each county.

¶14        Further, the interplay between subsections (B) and (C) supports the construction that "may" is mandatory. Subsection (B) requires ADHS to issue a registration certificate if the applicant satisfies the statutory requirements. Subsection (C) sets the maximum number of permissible dispensaries that ADHS "may not" exceed. However, subsection (C) provides one exception, that ADHS "may" exceed the maximum to ensure a county has at least one dispensary. "May" in § 36-2804(C) is a counterpoint to "may not" in the subsection and serves to remove the cap on dispensaries when keeping it would deprive a county of a dispensary. Accordingly, when subsections (B) and (C) are read together, ADHS must certify all qualified applicants until it reaches the limit of one dispensary for every ten pharmacies.

¶15        Finally, interpreting "may" as mandatory in this context furthers the AMMA's purpose to aid individuals with "debilitating medical conditions" by ensuring access to a dispensary in each county. *See* A.R.S. § 36-2801(15) ("'Qualifying patient' means a person who has been diagnosed by a physician as having a debilitating medical condition."); *see also* Ariz. Sec'y of State, 2010 Publicity Pamphlet 73 § 2(G) (2010), https://apps.azsos.gov/election/2010/info/PubPamphlet/english/e-book.pdf; A.R.S. § 36-2804.02(A)(3)(e), (f) (indicating legislative intent to ensure access to medical marijuana by allowing caregivers and patients the ability to grow their own medical marijuana when a dispensary is not operating within twenty-five miles of the patient's home).

¶16     The State alternatively argues that A.R.S. § 36-2803.01, enacted in 2019 and effective April 2020, supports its construction that the use of "may" in § 36-2804(C) is permissive. However, § 36-2803.01 does not apply to this case. To begin, § 36-2803.01 was not in effect when Saguaro applied for a registration certificate. Further, § 36-2803.01 deals with prioritization, while § 36-2804(C) concerns the number of certificates ADHS may issue. When §§ 36-2803.01 and -2804 are read together, the legislature is permitting more dispensaries in high density areas, while also prioritizing counties without dispensaries. Finally, § 36-2803.01 does not address § 36-2804(C)'s mandate that ADHS exceed the typical one-in-ten ratio for a county without a dispensary or whether ADHS can use its annual review data to deny a registration certificate to a qualified applicant for a county without a dispensary.

¶17     At bottom, § 36-2804(C) requires ADHS to deny a registration certificate if the maximum number of dispensaries exists and all counties have a dispensary. But if the maximum number of dispensaries exists and one or more counties do not have a dispensary, ADHS must grant a certificate to a qualified applicant, thus allowing a dispensary in a county without one.

**B.**

¶18     Because "may" is not discretionary in this context, ADHS's application of R9-17-303 as interpreted conflicts with § 36-2804(C) and cannot stand. *See Ariz. Bd. of Regents ex rel. Ariz. State Univ. v. Ariz. State Pers. Bd.*, 195 Ariz. 173, 175 ¶ 9 (1999) ("[I]f an agency rule conflicts with a statute, the rule must yield.").

¶19     Although the AMMA allows ADHS to adopt rules governing dispensaries, *see* § 36-2803(A)(4)(a), "[t]he scope of an agency's power is measured by statute and may not be expanded by agency fiat," *Cochise County v. Ariz. Health Care Cost Containment Sys.*, 170 Ariz. 443, 445 (App. 1991). Here, ADHS's power to adopt and interpret its rules is confined by § 36-2804(C), which commands ADHS to "ensure" that every county with a qualified applicant has at least one dispensary.

¶20     In its current form, ADHS's rule does not conflict with § 36-2804(C), but in this case, ADHS's interpretation and application of its rule contravenes the statute's requirement that ADHS issue a medical marijuana dispensary registration certificate to a qualified applicant from a county without a dispensary. ADHS's rule provides that each year it will review current valid dispensary registration certificates to decide if it will issue additional certificates in accordance with § 36-2804(C). Ariz. Admin. Code

R9-17-303(A). If, based on the annual review, ADHS determines it may issue more certificates, it will open the application process. *Id.* at (A)(1).[3]

**¶21** The rule provides that sixty working days after ADHS begins accepting applications, ADHS shall determine how it will prioritize the applications. *Id.* at (c). However, in this case, ADHS interpreted R9-17-303 as allowing it to prioritize the allocation of new registration certificates based on the annual review data gathered before the opening of the application period—thereby creating a conflict with the statute. Our dissenting colleague would defer to ADHS to determine when it may prioritize applications. We do not defer to ADHS in this case because although R9-17-303 requires that ADHS conduct an annual review, the application prioritization must comply with the statute's goal of ensuring one dispensary in each county with a qualified applicant. Deferring to ADHS here would clearly be contrary to law. *See* § 12-910(E) ("The court shall affirm the agency action unless the court concludes that the agency's action is *contrary to law*, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." (emphasis added)).

**¶22** We agree with our dissenting colleague that "a dispensary can still leave a county regardless of when the prioritization or allocation process occurs." *Infra* ¶ 32. But the statute requires that ADHS issue registration certificates, and necessarily open the application process, under two distinct circumstances: (1) if the allocation of dispensary certificates is below the one-in-ten ratio *or* (2) a county does not have a dispensary. § 36-2804(C). Accordingly, ADHS cannot use data obtained from the annual review for prioritization if it would result in denying a dispensary to a county without one during the application process. At minimum, if there is a qualified applicant for a county without a dispensary during the application process, as occurred here, the statute requires ADHS to issue a registration certificate to that applicant. Therefore, ADHS's application of R9-17-303 as interpreted, which caused it to deny a certificate to a qualified applicant from a county without a dispensary, violated § 36-2804(C). It is axiomatic that an agency's application of its rule must be consistent with Arizona law.

---

[3]     ADHS apparently interprets R9-17-303 to allow it to open the application process only if there is a new dispensary registration certificate available under § 36-2804(C)'s one-in-ten ratio. However, § 36-2804(C) commands ADHS to exceed the ratio to ensure one dispensary in each county; therefore, to comply with the statute ADHS must open the application process whenever there is a county without a dispensary during the annual review.

## CONCLUSION

**¶23**        For the foregoing reasons, we conclude § 36-2804(C) requires ADHS to issue at least one medical marijuana dispensary registration certificate in each county with a qualified applicant.  We also conclude that ADHS's interpretation of R9-17-303 contrary to this statutory mandate violates § 36-2804(C).  Accordingly, we vacate the court of appeals' decision, reverse the trial court's order dismissing Saguaro's complaint, and remand to the trial court to consider Saguaro's special action consistent with this opinion.  We grant Saguaro's request for attorney fees pursuant to A.R.S. § 12-348(A).

MONTGOMERY, J., concurring in part and dissenting in part:

¶24        Because bad facts make for bad law and an exception should not become the basis for a rule, I would have declined review of the petition in this case. Nevertheless, the matter is before us, and while I agree with the majority's interpretation of § 36-2804(C) at ¶¶ 11–14, I respectfully dissent from ¶¶ 15–23 involving the application of the statute to the facts of this case and the conclusion.

## I.

¶25        The crux of the issue before us actually concerns *when* ADHS can determine whether a county is lacking a dispensary and prioritize the allocation of available registration certificates. That Saguaro was unable to receive a certificate—which was never available—was not due to any unlawful, groundless, arbitrary, or capricious action by ADHS nor a result of an interpretation of a rule inconsistent with § 36-2804(C). Instead, it was simply a consequence of an administrative agency exercising broadly delegated legislative authority to govern a complex certificate allocation process. In fact, the AMMA itself provides the necessary recourse where a county may be without a dispensary until the next allocation period.

## II.

¶26        In this case, ADHS conducted an annual review of existing AMMA dispensary certificates with a record information date of May 31, 2016. The review established that every county had at least one licensed dispensary and, in compliance with § 36-2804(C), ADHS determined that it would issue thirty-one additional certificates. Accordingly, ADHS posted the following on its website on June 16, 2016:

> The Department will accept dispensary registration certificate applications from July 18 – July 29, 2016. During this allocation, 31 dispensary registration certificates will be available. The "record date" for the allocation will be May 31, 2016. Because there are no available counties as of the record date, the Department will not allocate certificates under R9-17-303(B)(1). Update - The top 31 CHAAs prioritized under R9-17-303(B)(2) will be made available by June 16. Any certificates not allocated under R9-17-303(B)(2) will be allocated under R9-17-303(B)(3).

**¶27**         Given that La Paz County had a dispensary in CHAA 36, it was not among the thirty-one CHAAs listed on June 16.[4] On or about July 19, two days into the open application period, the dispensary operating in CHAA 36 relocated from La Paz County to a CHAA in Maricopa County.

**¶28**         Even though CHAA 36 was not allocated a registration certificate, Saguaro went ahead and submitted an application during the open period for the CHAA anyway. Unsurprisingly, and consistent with the notice provided for the application process, ADHS did not allocate a registration certificate to Saguaro. ADHS notified Saguaro on October 6, 2016, that it would not be issued a certificate, and Saguaro subsequently brought a special action complaint against ADHS. The trial court ultimately dismissed the complaint on ADHS's motion, which the court of appeals affirmed.

### III.

**¶29**         The majority concludes that ADHS's interpretation of R9-17-303 is inconsistent with § 36-2804(C) for two reasons. First, the majority asserts that ADHS may not determine how to prioritize available certificates until sixty working days after the open application period begins. *Supra* ¶ 21. Second, the majority declares that ADHS's prioritization process "must comply with the statute's goal of ensuring one dispensary in each county with a qualified applicant." *Supra* ¶ 21.

### A.

**¶30**         Addressing the second reason first, by faulting ADHS's prioritization process because a county ended up without a dispensary after following a rule the majority acknowledges is valid, *supra* ¶ 20, the majority is effectively requiring ADHS to accommodate applications for certificates whenever a county no longer has a dispensary. There is no basis in the regulatory framework established pursuant to the AMMA to support this directive. The majority reads too much into § 36-2804(C) and does not fully account for the fact that the AMMA addresses the possibility that a dispensary may not be operating in a county. Specifically, § 36-

---

[4]        Aside from the fact that La Paz County had a dispensary with a registered certificate as of May 31, because La Paz County CHAAs 35, 36, and 37 had fewer qualifying patients with registry identification cards than the other CHAAs prioritized under R9-17-303(B)(2), they would not have otherwise qualified for a certificate.

2804.02(A)(3)(e), (f) permits individual qualified patients and caregivers to grow marijuana if a "dispensary is not operating within twenty-five miles of the qualifying patient's home." *See also* § 36-2801(1)(a)(ii), (b)(ii) (each permitting a qualified patient and caregiver, respectively, to cultivate marijuana). Moreover, there is simply no authoritative source to conclude that § 36-2804(C) was intended to make dispensaries ubiquitous in Arizona.

**B.**

**¶31**          The majority's assertion that ADHS cannot prioritize certificates until sixty days after it begins to accept applications is also unsupported by any statute or rule in the AMMA regulatory framework. The rule cited, R9-17-303(A)(1)(c), provides:

> Sixty working days after the date the Department begins accepting applications, the Department shall determine if the Department received more dispensary registration certificate applications that are complete and in compliance with A.R.S. Title 36, Chapter 28.1 and this Chapter to participate in the allocation process than the Department is allowed to issue.

There is no reference to the prioritization process, let alone any direction as to when it must occur. The rule simply provides a deadline to ensure the allocation process occurs within the statutory timeframe for issuing registration certificates. *See* § 36-2804(B).

**¶32**          The prioritization process is set forth at R9-17-303(B), which directs ADHS to allocate certificates based on prioritization criteria if "the Department receives, by 60 working days after the date the Department begins accepting applications, more dispensary registration certificate applications . . . than the Department is allowed to issue." Nowhere in the rules or § 36-2804(C) is ADHS required to wait until after the application period to prioritize available certificates. Even by rewriting the rule to fix this unique circumstance, the majority will not preclude a similar situation in the future because a dispensary can still leave a county regardless of when the prioritization or allocation process occurs.

**¶33**          "In circumstances like these, in which the [people have] not spoken definitively to the issue at hand, 'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.'" *Ariz. Water Co. v. Ariz. Dep't of Water Res.*, 208 Ariz. 147, 154 ¶ 30 (2004) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def.*

*Council, Inc.*, 467 U.S. 837, 844 (1984)). Even if the Court is not required to give deference to ADHS's interpretation of the statute and rules in question, an agency action should be affirmed "unless the court concludes that the agency's action is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." § 12-910(E).

**1.**

**¶34** To conclude that ADHS acted contrary to law, the majority reads a timing prohibition into the rules that does not exist in order to accomplish a statutory goal that is not supported when considering the entirety of the regulatory framework. The fact that the information known as of the record date later changed does not place ADHS's interpretation of R9-17-303 in conflict with § 36-2804(C). It simply means that under these rather exceptional circumstances, the sole applicant for La Paz County—which knew a month in advance of the application process that it could not receive a certificate—was not allocated one. Therefore, the consequence of determining that each county had a licensed dispensary in advance of the application period is not contrary to § 36-2804(C) but is actually addressed by the AMMA where qualified patients and caregivers may not be near an operating dispensary.

**2.**

**¶35** There was reasonable information from which ADHS based its determination for prioritizing the allocation of available certificates. An agency's consideration of facts and circumstances must look at "the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Compassionate Care Dispensary, Inc. v. Ariz. Dep't of Health Servs.*, 244 Ariz. 205, 213 ¶ 25 (App. 2018) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (internal quotation marks

omitted)).[5]   By grounding its analysis in the available facts and circumstances as of the record date, ADHS established a fair and transparent process that avoided arbitrary decision making.

¶36    Providing notice of the allocation priorities in advance of accepting applications also involves simple fairness to those deciding whether to apply in the first place, especially when considering what is required for an application.  Pursuant to § 36-2804(B), an applicant must provide information regarding the name and location of the dispensary and certify that it meets all local zoning requirements, provide personal identifying information for each principal owner and/or board member to facilitate a criminal background check, provide personal identifying information for each dispensary agent, provide a copy of all operational procedures to ensure compliance with ADHS governance rules, and pay $5,000.  Waiting to prioritize and publicize the availability of certificates until well after aspiring certificate recipients have had to prepare and submit all the necessary paperwork renders the filing of an application akin to buying a lottery ticket for $5,000.

¶37    Even Saguaro recognizes that "[t]he subsection (B)(2) prioritization is complex and time-consuming.  It is within ADHS's discretion and performance of its duties under subsection (B)(2) to get a head start and identify the CHAAs with high patient populations and fewer dispensaries during the subsection (A) review."  To calculate the number of available certificates as required by § 36-2804(C), ADHS had to first verify whether each county had a licensed dispensary, which it did, and then identify the number of pharmacies registered, permitted, and operating.

_____

[5]    In other contexts, agencies have received generous latitude for the rules they create when implementing their legitimate statutory authority.  *E.g.*, *Silver v. Pueblo Del Sol Water Co.*, 244 Ariz. 553 (2018) (upholding Arizona Department of Water Resources's regulations and procedures for determining statutorily required finding and interpretation of "legal availability" to determine adequate water supply for proposed development); *Facilitec, Inc. v. Hibbs*, 206 Ariz. 486 (2003) (Arizona Department of Administration's internal delegation of quasi-judicial authority upheld in keeping with statutory authority); *Goodman v. Superior Court*, 136 Ariz. 201 (1983) (Racing Commission regulations generally upheld within new statutory authority); *Cleckner v. Ariz. Dep't of Health Servs.*, 246 Ariz. 40, 44 ¶ 16 (App. 2019) (ADHS regulations that narrowed the scope of midwife practice were upheld despite a statute seemingly meant to allow a broader scope of practice).

Then, given the available information, ADHS had to determine which criteria for prioritizing the allocation of available certificates would apply. In this case, that meant reviewing the number of qualified patients residing in each CHAA and ranking the CHAAs accordingly.

¶38 Had the information available as of the May 31, 2016 record date revealed that there was no dispensary in La Paz County, and ADHS then neglected or simply refused to allocate a registration certificate, Saguaro would have a sound and persuasive claim and the majority's analysis and application of § 36-2804(C) would be entirely correct.

**3.**

¶39 ADHS's determination in advance of the application process that there were no certificates to allocate by county is entitled to deference unless the determination was "arbitrary, capricious, or . . . an abuse of discretion." *Silver*, 244 Ariz. at 557 ¶ 9 (quoting *J.W. Hancock Enters., Inc. v. Registrar of Contractors*, 126 Ariz. 511, 513 (1980)). An agency action is arbitrary and capricious when taken "without consideration and in disregard for facts and circumstances." *Maricopa Cty. Sheriff's Office v. Maricopa Cty. Emp. Merit Sys. Comm'n*, 211 Ariz. 219, 223 ¶ 17 (2005) (quoting *Maricopa County v. Gottsponer*, 150 Ariz. 367, 372 (App. 1986)). But, "where there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." *Id.* (quoting *Gottsponer*, 150 Ariz. at 372).

¶40 Given the objective and accurate data as of the record date, the complex process for determining prioritizations under the circumstances, and the establishment of a process that was objectively fair and transparent for all applying for available certificates, there is nothing arbitrary or capricious about ADHS's determination.

**III.**

¶41 Lastly, article 3 of the Arizona Constitution commands that "no one of such departments shall exercise the powers properly belonging to either of the others." Therefore, we should be even more hesitant to offer our own "fix" for unique issues within the administration of a complex regulatory framework where the responsibility is expressly delegated by the legislative authority to an executive agency. That the majority finds no fault with the rule itself, *supra* ¶ 20, reveals that the Court simply disagrees

with how an executive agency is carrying out its delegated authority. Given the recent passage of § 36-2803.01 addressing allocation priorities and geographic displacement of dispensaries, the legislature has demonstrated its ability to provide direction to ADHS in allocating registration certificates. We need not do so.

**IV.**

**¶42** ADHS's prioritization of available registration certificates in advance of the application process was a reasonable and practical exercise of its delegated responsibility to govern the certificate allocation process. Similarly, its determination that no certificate was available for La Paz County for purposes of allocating registration certificates was not arbitrary, capricious, or an abuse of discretion. Again, while I would not have granted review in the first place, I would affirm the court of appeals' decision.