IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

TIMOTHY MARSH, *Appellant*,

*v.*

LISA ATKINS, et al., *Appellees*.

No. 1 CA-CV 22-0555
FILED 8-31-2023

———————————————

Appeal from the Superior Court in Maricopa County
No. LC2021-000137-001
The Honorable Daniel J. Kiley, Judge, (Retired)

**AFFIRMED**

———————————————

COUNSEL

Fennemore Craig, P.C., Phoenix
By Norman D. James, Tyler D. Carlton
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Paul Katz, David F. Jacobs
*Counsel for Appellees*

Rose Law Group, PC, Scottsdale
By Andrew B. Turk, Logan V. Elia
*Counsel for Amicus Curiae Arizona Sonoran Copper Company USA*

---

**OPINION**

---

Judge Anni Hill Foster delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**F O S T E R**, Judge:

¶1        Dr. Timothy Marsh appeals the superior court's order affirming the Arizona State Land Department's ("Department" or "ASLD") decision to deny two of Marsh's mineral exploration permit ("MEP") applications. For the following reasons, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        In September 2019, Marsh applied for eighteen MEPs with the ASLD. Two of those applications are the subject of this appeal (the "applications"). As part of the application process, the ASLD was required to give Marsh written notice by late-October 2019 of "the state land that is described in the application," the rental price, and whether a bond would be required. A.R.S. § 27-251(B). The ASLD, however, did not issue the written notices until July 2020. Those notices denied the applications.

¶3        Elim Mining and LKY Copper Mountain Investment owned the land subject to the MEPs sought in the applications. The ownership rights of Elim Mining and LKY Copper Mountain Investment were derived from a state patent that the ASLD issued in 1995. That patent reserved all mineral rights for the state but, pursuant to A.R.S. § 37-231, the surface owner of the land "shall have the first right of refusal to acquire" MEPs for the land. Given the first right of refusal provision, the ASLD informed Elim Mining and LKY Copper Mountain Investment about Marsh's pending MEP applications.

¶4        Following the July 2020 denial, Marsh timely appealed, seeking an administrative hearing. *See* A.R.S. § 41-1092.03(B). On or about March 1, 2021, the parties entered settlement discussions during which the ASLD determined that its reasons for denying the applications were insufficient. However, the ASLD provided no new written notice of denial to Marsh. A few days later, on March 5, 2021, Elim Mining sent a letter to the ASLD exercising its first right of refusal. Three days later, LKY Copper Mountain Investment sent a letter to the ASLD asserting its first right of

2

refusal. Around this time, the ASLD orally informed Marsh that they had a new basis to deny the applications: the surface owner's exercise of their first rights of refusal, as described in A.R.S. § 37-231(E)(2).

¶5        About two weeks later, an Administrative Law Judge ("ALJ") from the Office of Administrative Hearings held a hearing on Marsh's appeal of the application denials. Based on the evidence presented at that hearing, the ALJ determined that the ASLD erred by not giving Marsh written notice about its new reasoning for denying the applications, relying on *Carlson v. Ariz. State Personnel Bd.*, 214 Ariz. 426 (App. 2007). The ALJ stated that "[b]ecause the Department has rescinded its stated reasons for denying Dr. Marsh's applications and has acknowledged that MEPs can be issued for the land at issue, there is no basis in this record on which the applications may be denied." The ALJ recommended that Marsh's MEP applications be granted.

¶6        Pursuant to the Administrative Procedure Act ("APA"), the ALJ's recommendations went to the ASLD for final disposition. A.R.S. § 41-1092.08(B).[1] In May 2021, the ASLD rejected the ALJ's decision with the justification that Elim Mining and LKY Copper Mountain Investment properly exercised their first rights of refusal. The ASLD modified the ALJ's findings, noting the right of first refusal communications with Elim Mining and LKY Copper Mountain Investment. Marsh timely appealed the ASLD's decision to the superior court. *See* A.R.S. § 12-904(A).

¶7        In July 2022, after full briefing and oral argument, the superior court affirmed the ASLD's decision to deny the applications because the surface owners exercised their statutory first rights of refusal. Marsh appeals, and this Court has jurisdiction under A.R.S. § 12-913 and Arizona Rule of Procedure for Judicial Review of Administrative Decisions 13.

## DISCUSSION

¶8        At issue here is the denial of MEPs and the interplay of the APA with the rights of owners of land held under a state land patent. Though Marsh seemingly raises only one issue on appeal—whether the ASLD wrongfully relied on section 37-231(E)(2) rather than section 27-251(B) in denying his MEP applications—he also challenges the procedures

---

[1] Arizona Revised Statutes section 41-1092.08 was amended during the 2021 Legislative session. This opinion applies the 2017 version of the statute, which was in effect at the time of the ALJ's and Department's decisions.

followed by the ASLD by alleging that the ASLD's "post hoc justification" for denial was in error.

¶9        In a challenge to an agency action, a court's role is to review the record to determine if the agency's final "action is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(F). *See also Ariz. Comm'n of Agric. and Horticulture v. Jones,* 91 Ariz. 183, 187 (1962). A court is limited to affirming, reversing, modifying or vacating and remanding the agency action. A.R.S. § 12-910(F).

¶10       For factual determinations "[this Court must] review the record to determine whether substantial evidence supports the agency's decision and whether the agency exercised its discretion reasonably and with due consideration," *see State ex rel. Winkleman v. Ariz. Navigable Stream Adjudication Comm'n*, 224 Ariz. 230, 238, ¶ 14 (App. 2010). But in reviewing the evidence, no deference can be given to the agency's factual findings. *see* A.R.S. § 12-910(F). "Any legal issues addressed by the agency or the superior court" are reviewed *de novo* or without deference to the agency's interpretation of the law. A.R.S. § 12-910(F); *Holcomb v. Ariz. Dep't of Real Estate*, 247 Ariz. 439, 443, ¶ 9 (App. 2019); *accord. Cooke v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 141, 144, ¶ 13 (App. 2013).

## I.     SECTION 27-251(B) AND SECTION 37-231(E)(2) MUST BE READ TOGETHER.

¶11       The Legislature delegated to the ASLD the authority and responsibility to "administer all laws relating to lands owned by, belonging to and under the control of this state." A.R.S. § 37-102(A). As a trustee, the Commissioner of the ASLD has a fiduciary obligation to manage the portfolio to the benefit of the state land trust established by Arizona's enabling clause. *See Forest Guardians v. Wells*, 201 Ariz. 255, 260, ¶¶ 2, 13 (2001). With this responsibility, the Legislature outlined specific processes and procedures that dictate and limit the Commissioner's and the Department's authority. Much of the delegated authority and responsibility can be found in Title 37, *Public Lands*, but other titles also define the ASLD's and the Commissioner's authority. (*See* A.R.S. Title 27, Chapter 2, *Mining Rights in Land*; Title 38, *Public Officers and Employees*; Title 39, *Public Records, Printing and Notices*; and Title 41, *State Government*.)

¶12       As part of its duties to administer state land, the ASLD is tasked with issuing MEPs, which allow individuals to survey state-owned land for potential mineral deposits that, if found, can then be mined under

a mineral lease. The process for obtaining an MEP is outlined in section 27-251 of the Arizona Revised Statutes. It allows for any person to seek an MEP—even if they are not the property owner. A.R.S. § 27-251(A). The statute also states, "The application shall have priority over any other application for a mineral exploration permit involving the same state land which may be filed with the department subsequent to such time and date, and such land shall be deemed withdrawn as long as the application is pending." A.R.S. § 27-251(A).

¶13        Correspondingly, the ASLD is tasked with disposing of state land. When state land is sold to a purchaser, that purchaser is entitled to a patent demonstrating ownership of that parcel. A.R.S. § 37-251(A). A patent is the highest evidence of title and cannot be attacked in a collateral proceeding. *See State v. Crawford*, 7 Ariz. App. 551, 554-55 (1968). Land patents, though, are subject to reservations of subsurface materials that are retained by the state and provide a first right of refusal for MEPs. A.R.S. § 37-231(E). Specifically, section 37-231(E)(2) states in part that the ASLD "may issue" MEPs "provided that the surface owner or owners *shall* have the first right of refusal to acquire such mineral exploration permits." (Emphasis added.)

¶14        "When construing two statutes, this Court will read them in such a way as to harmonize and give effect to all of the provisions involved." *State v. Bowsher*, 225 Ariz. 586, 589, ¶ 14 (2010) (citiations omitted). "[I]f statutes relate[d] to the same subject and are thus *in pari materia* [upon the same matter], they should be construed together with other related statutes as though they constituted one law." *Pima County by City of Tucson v. Maya Constr. Co.*, 158 Ariz. 151, 155 (1988). Statutes should be construed to give effect to their objects. A.R.S. § 1-211(B). "In construing the meaning of the several statutes they should be read together to give effect to all if possible." *Ordway v. Pickrell*, 112 Ariz. 456, 459 (1975) (citations omitted).

¶15        Both sections 27-251(B) and 37-231(E)(2) relate to mineral exploration permits for state land, and both provide bases for the ASLD to deny an application for an MEP. Section 27-251(B) provides five specific reasons for denying an application for an MEP but also requires that the ASLD Commissioner "find[] that issuing the permit is in the best interest of the trust" before issuance. Similar language is present in section 37-231(E)(2) which states, "the department may issue…[MEP]s…when such issuance is deemed in the best interest of the state…."

¶16 Marsh contends that the right conferred by section 37-231(E)(2) should not be considered in relation to his MEP applications because section 27-251 allows the Commissioner to deny applications only for five statutorily provided reasons. His reading, though, fails to consider the entire statutory scheme.

¶17 Section 37-231(E)(2) requires the ASLD to provide the first right of refusal of the surface owner, particularly given the use of the word "shall," which typically indicates that the statutory right is "required." *Cf. Verma v. Stuhr*, 223 Ariz. 144, 157, ¶ 68 (App. 2009) ("[A] statutory right may not be waived where waiver is expressly or impliedly prohibited by the plain language of the statute."). When the plain language of the statute "is clear and unambiguous, we give effect to it and do not use other methods of statutory interpretation." *Mathews ex rel. Mathews v. Life Care Ctrs. of Am., Inc.,* 217 Ariz. 606, 608, ¶ 6 (App. 2008).

¶18 Although section 27-251(B) prioritizes MEP applications based on the date of submission, such language cannot be read without also considering the first right of refusal provided in section 37-231(E)(2). The Court notes that the best interest determination language was present in section 37-231(E)(2) before it was present in section 27-251(B). *See* 1978 Ariz. Sess. Laws, ch. 129, § 2 as compared to 1989 Ariz. Sess. Laws, ch. 288, § 7, suggesting that section 27-251(B) was amended to harmonize the language in section 37-231(E)(2). The language of the two statutes must be read together and, in doing so, can be harmonized. Marsh's argument ignores the plain language of the statutes.

## II. THE FIRST RIGHT OF REFUSAL IN SECTION 37-231(E)(2) SUPERCEDES ANY EXPECTATION THAT SECTION 27-251 MAY PROVIDE.

¶19 At common law, a first right of refusal is a "pre-emptive right" giving the owner of that right the option to acquire property. *Phipps v. CW Leasing, Inc.,* 186 Ariz. 397, 400 (App. 1996); *see also ABCDW LLC v. Banning,* 241 Ariz. 427, 438, ¶ 47 (App. 2016). In this instance, the first right of refusal is a statutory right, legally obligating the ASLD to provide a property owner the opportunity for an MEP before the ASLD provides it to another person. A.R.S. § 37-231(E). Marsh contends that the first right of refusal is not relevant to section 27-251(B) and "no more than a priority rule governing whose application gets processed first." Marsh relies on *Saguaro Healing LLC v. State*, 249 Ariz. 362 (2020), stating that an agency's application of its rule as interpreted cannot conflict with a statute. But *Saguaro* addressed at length the meaning of the word "may" and whether

it was permissive or mandatory. *Saguaro Healing*, 249 Ariz. at 364-65, ¶¶ 11-15. Its reasoning supports the ASLD's position that section 27-251(B) conditions the issuance of an MEP on a best interest finding because the "shall issue" provision follows the predicate condition of "if the commissioner finds…[it] is in the best interest of the trust." A.R.S. § 27-251(B).

¶20     The superior court correctly noted that Marsh "downplays the significance of the rights that A.R.S. § 37-231(E) confers on surface owners." The language of section 27-251(B) means that the ASLD has a duty to grant the application, but only after the ASLD determined it to be in the "best interest" of the trust. The superior court's finding that section 37-231(E) triggers the first right of refusal only after a best interest determination is made and is favorable to the applicant is well reasoned. The "best interest" provision gives the commissioner great discretion in determining whether to grant an application for an MEP. This discretion is expressly contained throughout the ASLD's enabling statutes. *See Campana v. Ariz. State Land Dep't*, 176 Ariz. 288, 291 (App. 1993) (noting the ASLD "Commissioner has great discretion concerning the disposition of trust lands and has authority to devise detailed plans for the sale, lease, and use of state land"); A.R.S. § 37-132(A)(5) and (11). When interpreting the language "we use the common meanings of terms that are not defined by statute." *Melendez v. Hallmark Ins. Co.*, 232 Ariz. 327, 330, ¶ 10 (App. 2013). The statutory language in section 37-231(E)(2) is clear and unambiguous.

¶21     Common law indicates that a first right of refusal is triggered "when and if [the landowner] desires to sell the premises" or, in this case, when the possessor of the right implicated seeks to assert it. *Phipps,* 186 Ariz. at 400. Likewise, section 37-231(E) triggers the surface owners' right of first refusal once the ASLD finds issuing the MEP is in the trust's "best interest." As noted by the superior court, it would not be sensible to have surface owners assert their first rights of refusal when the ASLD has not even made a best interest determination. Here, even though the surface owners' land is closed to entry according to section 27-251(A), the "best interest" determination triggers the first right of refusal. The ASLD's interpretation of the application process does not violate section 27-251(A).

¶22     Marsh's assertion that the ASLD's "sixth" basis for denial—that the owner has exercised its first right of refusal—improperly expands section 27-251(B) is misplaced. *See Roberts v. State*, 253 Ariz. 259, 266, ¶ 20 (2022). Reading the statutes, both separately and together, the text provides the ASLD discretion to determine if an MEP should be issued. Section 27-251(B) provides specific reasons authorizing the ASLD to deny a permit,

but the plain language of the statute does not make those reasons exclusive. Also, section 37-231(E)(2) expressly gives surface owners the first right of refusal and gives the ASLD discretion on when an MEP should be issued. The superior court's reading of sections 27-251(B) and 37-231(E)(2) does not "expand" section 27-251(B).

¶23        In addition to the statutory scheme that supports the harmonization of sections 27-251 and 37-231, the ASLD's adopted regulations in the Administrative Code clarify the lack of rights an MEP applicant holds compared to that of a property owner. Section R12-5-1903(I) states, "The filing of an application for a mineral exploration permit shall not confer upon the applicant any greater right to use of the land under application than that held before such filing." Here, Marsh's interest in seeking the MEP did not, somehow, trump the first right of refusal held by the landholders and, instead, was subservient to the landholders' rights. The record shows that the first right of refusal was exercised by Elim Mining and LKY Copper Mountain Investment once they were informed that the land was open for exploration. They did not waive their rights such that they could pass on to another.

¶24        Marsh also argues that section 27-251(B) contemplates a two-step process rather than the ASLD's assertion of a three-step process that unnecessarily expands the statute. Marsh contends that the ASLD should determine (1) if the land is open to application, which includes seeing if the surface owners have the first right of refusal, and then (2) whether an MEP would be in the best interest of the trust. Marsh states that the ASLD creates a three-step process where it determines (1) if the land is open to application, (2) whether an MEP would be in the best interest determination of the trust, and (3) only when it is in the state's best interest, then the first right of refusal is triggered. Although Marsh's reading is plausible, it is not the only reading of how to apply the law. As the executive branch is tasked with implementing laws, the judiciary will not dictate a procedure that is within the law. Marsh has shown no error.

III.        SECTION 37-231(E)(2) REQUIRED THE ASLD TO GIVE THE SURFACE OWNERS NOTICE OF THE MEP APPLICATIONS.

¶25        Marsh also argues that section 37-231(E)(2) does not require the ASLD to give notice to the surface owners that an MEP application is pending. Instead, Marsh contends that the surface owners are responsible to check whether applications have been made on their land and notify the ASLD if they intend to exercise their first right of refusal. The superior court found that, although the statute does not expressly require the ASLD to

provide notice to the surface owners, the only reasonable interpretation of the statutory scheme was to require notice.

¶26        Section 37-231(E)(2) expressly gives surface owners "the first right of refusal to acquire" MEPs. There is no ambiguity. The first right of refusal is a statutory grant of an interest in the property. *See* A.R.S. § 37-231(E)(2). Marsh has not shown how failing to provide notice to the owner of that right would comply with due process requirements under Arizona law. *See* Ariz. Const. art. II, § 4. To avoid such constitutional issues, the ASLD provides notice to the property owner regarding the first right of refusal before issuing an MEP based on an application by another. Marsh's argument that surface owners are required to continually check for permit applications fails. Along with these due process concerns, Marsh does not show, as a practical matter, how a surface owner could obtain that information before the issuance of an MEP. Therefore, this Court agrees with the superior court that "[i]t would hardly make sense to impose an independent obligation on every surface owner to continually monitor public records to learn if any MEP applications have been filed that relate to his or her land;" first rights of refusal are not activated by an MEP application. No such obligation is legally defensible.

¶27        Marsh also argues that requiring the ASLD to notify the surface owners following a finding that an MEP is in the best interest obstructs the statutory regime's purpose. Marsh contends that the Arizona Legislature established the MEP process to maximize income from the state lands. But even assuming his argument is correct, Marsh has not shown how it would comply with due process requirements. The superior court correctly interpreted section 37-231(E)(2) to require the ASLD to notify surface owners after making a "best interest" determination for MEP applications filed on their land.

## IV.        THE ASLD'S FAILURE TO TIMELY COMPLY WITH THE PROCEDURAL PROCESS DOES NOT ABROGATE THE SURFACE OWNERS' STATUTORY FIRST RIGHT OF REFUSAL.

¶28        Marsh contends that the ASLD erred by not following statutory timeframes, meaning the ASLD was required to issue Marsh the MEPs he sought. The ASLD does not dispute that it failed to meet the statutorily mandated deadline for issuing the notices. A.R.S. § 27-251(B). Rather, after failing to meet the statutorily mandated deadline, the ASLD at the eleventh hour and in the middle of Marsh's appeal changed its reasoning for denying the permits, only providing a verbal notification.

Written notification was not provided to Marsh until the ASLD's rejection of the ALJ's recommendation.

**¶29** Marsh argues that because he did not receive written notice of the ASLD's new reasoning to deny the applications until after the ALJ hearing, the ASLD's decision must be vacated. In doing so, Marsh relies on this Court's decisions in *Univ. Med. Ctr. of S. Nev. v. Health Choice Ariz.*, 253 Ariz. 524 (App. 2022) and *Carlson v. Ariz. State Personnel Bd.*, 214 Ariz. 426, 432–33 (App. 2007).

**¶30** The timing in this case is different than that of *University Medical Center*, where the appellants first provided new reasoning for an administrative decision on appeal to this Court. *Univ. Med. Ctr.*, 253 Ariz. at 531, ¶ 32 n.3. Similarly, in *Carlson*, notice was not provided until after the final determination was made. *Carlson*, 214 Ariz. at 432-33, ¶ 22. Here, Marsh was provided with written notice and an opportunity to be heard regarding the denial based on section 37-231(E)(2) following the ASLD's final administrative decision. The cases cited by Marsh are inapposite and A.R.S. § 41-1092.08 governs here.

**¶31** In addition to the procedures outlined in section 27-251 for obtaining an MEP, the APA, found in A.R.S. Title 41, Chapter 6, outlines the requirements for agencies to follow when implementing and enforcing regulations. Arizona's APA was originally adopted in 1952, standardized the process state government must follow when adopting and implementing regulations, 1952 Ariz. Sess. Laws, ch. 97, and has been amended many times, *see* 1986 Ariz. Sess. Laws, ch. 232; 1995 Ariz. Sess. Laws, ch. 251; 1996 Ariz. Sess. Laws, ch. 102; 1998 Ariz. Sess. Laws, ch. 57; 2018 Ariz. Sess. Laws, ch. 178 & 337; 2021 Ariz. Sess. Laws, ch. 161. As part of the APA, A.R.S. § 41-1001.01, *Regulatory Bill of Rights*, outlines the specific guarantees that citizens who are regulated by the government are entitled. The section includes requirements such as notice, opportunity for hearing with uniform procedures and that information be transparent. A.R.S. § 41-1001.01(A).

**¶32** Section 41-1001.01(A)(14), cited by Marsh, requires that a person "receive written notice from [the ASLD] . . . [t]hat justifies the denial with references to the statutes or rules on which the denial is based as provided in § 41-1076 . . . ." But other sections of the APA also apply. Title 41, Chapter 6, Article 10 outlines the process for administrative hearings regarding appealable agency actions. Sections 41-1092.05 through 41-1092.07 outline the process for review of appealable agency actions for

which Marsh availed himself. But most importantly, section 41-1092 defines both "Appealable agency action" and "Final administrative decision."

¶33        Contrary to Marsh's position, the ASLD's final administrative decision, which was subject to judicial review under the APA, was the modification of the ALJ's decision that stated the denial was due to the right of first refusal. *See* A.R.S. § 41-1092.08 ("final administrative decisions"); A.R.S. 41-1092(6) (defining "final administrative decision" as "a decision by an agency that is subject to judicial review" under the APA). Once the ASLD issued its final administrative decision on this issue, the superior court had jurisdiction to consider the reasoning provided in that decision. The notice and the opportunity to be heard in the superior court afforded Marsh the rights outlined in A.R.S. § 41-1001.01.

## V.        THE ASLD'S FAILURE TO COMPLY WITH THE ADMINISTRATIVE PROCEDURES ACT DOES NOT RESULT IN THE AWARD OF THE PERMITS.

¶34        Citing *Shelby Sch. v. Ariz. State Bd. of Educ.*, Marsh argues that the best interest denial could not be issued post hoc on the eve of the appeal hearing. He cites the *Regulatory Bill of Rights*, specifically A.R.S. § 41-1001.01(A)(14), to support his position.

¶35        While section 41-1001.01(A)(14) does provide that a person is "entitled to review written notice," it does not state when such notice must be provided. Instead, section 41-1001.01(A)(14) references A.R.S. § 41-1076, which addresses the requirement that an agency meet specific statutory time frames for reviewing applications for licenses. The time frame requirement, though, is tied to either language in the substantive statute (as it is here) or the procedural time frames that the agency adopted under A.R.S. § 41-1073.

¶36        Here, section 27-251(B) provides a timeline for the ASLD to act on an MEP application. With some exceptions, the statute requires that between 30 and 45 days from the filing of the application, the ASLD must notify the applicant if the land was open for exploration. A.R.S. § 27-251(B). The ASLD failed to respond to Marsh's application within that time frame and contends instead that it had an infinite amount of time to make a best interest determination. Likewise, the superior court also concluded that the ASLD had no timeline to make a best interest determination under section 27-251(B). But this Court fails to see the ASLD's or the superior court's logic or justification when considering other relevant statutes.

¶37 The language of section 27-251(B) provides a clear directive of the timeline required for the ASLD to act on an MEP. Even adopting the ASLD's argument that it had additional time to make a best interest determination, such cannot run afoul of the APA. Section 41-1073 requires an agency to adopt regulations detailing the timelines for review of regulatory processes. The ASLD failed to adopt any regulations pursuant to section 41-1073 and therefore cannot now use that as a shield. The ASLD failed to meet the statutory timeline requirements in section 27-251(B) and failed to comply with the APA.

¶38 Such a failure, however, does not result in a waiver of the surface owners' statutory first rights of refusal. *See Ayer v. General Dynamics Corp.*, 128 Ariz. 324, 326 (App. 1980) ("[W]here rights are clearly established and defined by statute, equity has no power to change or upset such rights."); *see also Verma*, 223 Ariz. at 157, ¶ 68. That failure cannot divest Elim Mining and LKY Copper Mountain Investment of their statutory rights. For this reason, contrary to the remedy proposed by the ALJ, the ASLD's failure to comply with the APA does not automatically result in Marsh receiving the MEPs.

## CONCLUSION

¶39 For the foregoing reasons, the superior court's order is affirmed. Marsh asks to be awarded his reasonable attorneys' fees and costs as the prevailing party under A.R.S. § 12-348(A)(2). *Amicus* Arizona Sonoran Copper Company USA requests to be awarded its reasonable fees and costs under A.R.S. § 12-348. This Court denies both requests for attorneys' fees.



AMY M. WOOD • Clerk of the Court
FILED: AA