IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

SUN CITY HOME OWNERS ASSOCIATION,
*Appellant*,

*v.*

ARIZONA CORPORATION COMMISSION,
*Appellee*,

EPCOR WATER ARIZONA, INC. AND VERRADO COMMUNITY ASSOCIATION,
INC.,
*Intervenors*.

No. CV-20-0047-PR
Filed October 1, 2021

Appeal from the Arizona Corporation Commission
No. WS-01303A-16-0145
**AFFIRMED**

Opinion of the Court of Appeals, Division One
1 CA CC-17-0002
Filed January 23, 2020
**AFFIRMED IN PART; VACATED IN PART**

COUNSEL:

Robert L. Ellman (argued), Ellman Law Group LLC, Phoenix, Attorney for Sun City Home Owners Association

Andy M. Kvesic, Chief Counsel/Legal Division Director, Maureen A. Scott, Deputy Chief of Litigation and Appeals, Wesley C. Van Cleve (argued), Assistant Chief Counsel, Stephen J. Emedi, Naomi D. Bentley, Arizona Corporation Commission, Phoenix, Attorneys for Arizona Corporation Commission

Michael T. Hallam, Lawrence A. Kasten (argued), Lewis Roca Rothgerber Christie LLP, Phoenix, Attorneys for EPCOR Water Arizona Inc.

Michele Van Quathem, Law Offices of Michele Van Quathem, PLLC, Phoenix, Attorney for Verrado Community Association, Inc.

Meghan H. Grabel, Osborn Maledon, P.A., Phoenix, Attorneys for Amicus Curiae Arizona Water Company

Timothy Sandefur, Scharf-Norton Center for Constitutional Litigation at The Goldwater Institute, Phoenix, Attorneys for Amicus Curiae Goldwater Institute

Timothy J. Sabo, Regulatory Counsel, Global Water Resources, Inc., Phoenix, Attorney for Amicus Curiae Global Water Resources, Inc.

Jay L. Shapiro, Shapiro Law Firm, P.C., Phoenix, Todd C. Wiley, Liberty Utilities (Sub) Corporation, Vice President and Associate General Counsel, Litchfield Park, Attorneys for Amicus Curiae Liberty Utilities (Sub) Corporation

Timothy J. Berg, Emily A. Ward, Fennemore Craig, P.C., Phoenix, Attorneys for Amicus Curiae Freeport Minerals, Inc.

Aditya Dynar, Litigation Counsel, New Civil Liberties Alliance, Washington, DC, Attorneys for Amicus Curiae New Civil Liberties Alliance

Clyde P. Halstead, Carpenter, Hazlewood, Delgado & Bolen, Tempe, Attorneys for Amicus Curiae Anthem Community Council

Daniel W. Pozefsky, Chief Counsel, Residential Utility Consumer Office, Phoenix, Attorney for Amicus Curiae Residential Utility Consumer Office

Scott Bales, Scott Bales LLC, Phoenix, Attorney for Amici Curiae Arizona Public Service Company and Tucson Electric Power Company

Raymond S. Heyman, Amanda Z. Weaver, Snell & Wilmer L.L.P., Phoenix, Attorneys for Amicus Curiae National Association of Water Companies

Andrew M. Jacobs, Michael W. Patten, Snell & Wilmer L.L.P., Phoenix, Attorneys for Amicus Curiae Water Utilities Association of Arizona

Mark Brnovich, Arizona Attorney General, Brunn (Beau) W. Roysden III, Solicitor General, Michael S. Catlett, Deputy Solicitor General, Phoenix, Attorneys for Amicus Curiae State of Arizona

Jeffrey W. Crockett, Crockett Law Group PLLC, Phoenix, Attorney for Amici Curiae The Town of Paradise Valley and The Sanctuary Camelback Mountain Resort & Spa, The JW Marriott Camelback Inn Scottsdale, The Omni Scottsdale Resort & Spa at Montelucia, The Andaz Scottsdale Resort & Spa, MS Resort Owner LLC D/B/A Mountain Shadows, and The Ritz-Carlton Paradise Valley

Doug Edwards, Fran Noe, Diane Smith, Pro Se, Amicus Curiae

_____

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES LOPEZ, BEENE, MONTGOMERY, and JUDGE VÁSQUEZ joined.[*] JUSTICE BOLICK issued a concurring opinion.

––––––––––––––––––

JUSTICE BOLICK, Opinion of the Court:

¶1          In this case we hold that the Arizona Corporation Commission ("Commission") is not entitled to "extreme deference" in its utility ratemaking determinations.  Even without such deference, however, its decision to consolidate several communities into a single service district, gradually increasing rates for some and lowering them for others to achieve uniform rates, does not violate the Arizona Constitution's prohibition against discriminatory rates.

## BACKGROUND

¶2          Article 15, section 3 of the Arizona Constitution provides, in relevant part, that the Commission "shall have full power to, and shall, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations."  Article 15, section 12 conditions that power, stating that "[a]ll charges made for service rendered, or to be rendered, by public service corporations within this state shall be just and reasonable, and no discrimination in charges, service, or facilities shall be made between persons or places for rendering a like and contemporaneous service."

¶3          EPCOR Water Arizona Inc. ("EPCOR") provides water and wastewater services in various communities throughout Arizona.  In February 2012, EPCOR acquired five wastewater districts: Agua Fria, Anthem, Mohave, Sun City, and Sun City West.   All except Mohave are within the Phoenix metro area.    Primarily, the communities are geographically distinct and serviced by separate wastewater treatment

––––––––––––––––––

[*] Before his retirement, Justice Andrew W. Gould (Ret.) was recused from this case.  Pursuant to article 6, section 3 of the Arizona Constitution, Judge Garye L. Vásquez, Division Two, Arizona Court of Appeals, was designated to sit in this matter.

facilities, but EPCOR has centralized corporate services.

¶4        Each community pays different monthly wastewater rates, ranging from $22.11 per month in Sun City, to $71.16 per month in Agua Fria.  The rates have also varied between communities using the same wastewater treatment facility.  The communities paying higher rates urged the Commission to impose a consolidated rate.

¶5        To allow the affected parties and the Commission to evaluate whether to support consolidated rates, in December 2014 the Commission ordered EPCOR to file a rate application to include revenue requirements with cost-of-service studies for each district under three scenarios: (1) full consolidation into one district; (2) the existing "stand-alone" scenario, where the five districts would remain separate; and (3) full deconsolidation creating seven separate districts based on a single wastewater treatment facility serving each area.  EPCOR filed the application in April 2016.

¶6        In February 2017, the Commission conducted a six-day evidentiary hearing addressing the consolidation.  Evidence demonstrated that EPCOR's financing, operational, and administrative functions were centralized.  Furthermore, evidence suggested that full consolidation would provide predictable uniform rate structures, reduce regulatory expenses, and increase efficiencies.  Under full consolidation, EPCOR estimated the utility would save almost $1 million over five years, with most of the savings deriving from reduced rate case filings with the Commission.  Moreover, EPCOR noted that most pipes in the Sun City district are nearing the end of their usability, which is an expense requiring about $57.5 million in improvements over the next ten years.[1]

¶7        The Sun City Home Owners Association and the Residential Utility Consumer Office intervened, opposing full consolidation in favor of the existing stand-alone model.  They argued that the consolidated rate would not reflect the actual costs for Sun City residents, which were much lower than the other districts.  Likewise, they argued EPCOR's $57 million cost estimates for Sun City infrastructure improvements were speculative, and that in actuality, EPCOR projected spending more than $100 million on improvements in the other four water districts during the same time period.  Of the affected parties, none supported full deconsolidation.

---

[1] Improvements to other districts are also planned.

¶8          In a 4–1 decision, the Commission approved the full consolidation scenario.  This was supported by EPCOR, the Commission staff, and the Agua Fria, Anthem, and Mohave districts.  A five-year phase-in period to reach fully consolidated rates would affect consumers such that the monthly bill for Agua Fria customers would decrease from $71.16 to $38.59 over five years; the monthly bill for Anthem customers from $60.33 to $38.59; and from $71.07 to $38.59 for Mohave customers.  However, the monthly bill for Sun City customers would increase from $22.11 to $38.59 over five years, and from $32.46 to $38.59 for Sun City West customers.

¶9          Sun City unsuccessfully applied for a rehearing and then filed an appeal.  Verrado Community Association, Inc. and EPCOR were granted permission to intervene in support of the Commission's decision by the court of appeals.  Sun City argued that (1) the Commission had breached its constitutional duty to set just and reasonable rates; (2) the consolidated rate discriminated against residents of Sun City; and (3) the Commission's adoption of the consolidated rate was arbitrary and capricious.

¶10          The court of appeals upheld the Commission's decision, affording it "extreme deference," stating that its actions were presumed to be constitutional, and applying a substantial evidence standard of review. *Sun City Home Owners Ass'n v. Ariz. Corp. Comm'n*, 248 Ariz. 291, 296–97 ¶¶ 13–14 (App. 2020) ("*Sun City*").  The court concluded that (1) the Commission properly considered evidence concerning the increased cost of service and adopted the consolidated rate in accordance with such evidence, *id.* at 297–98 ¶¶ 15–18; (2) the consolidated rate is not discriminatory, *id.* at 299 ¶ 23; and (3) the Commission did not act arbitrarily or capriciously in adopting the consolidated rate, *id.* at 299–301 ¶¶ 24–31.  In a lengthy dissent, Judge Brown opined that the majority erroneously gave "excessive deference" to the Commission, and further concluded that the case should be remanded because the Commission failed to fully explain why a consolidated rate is not discriminatory.  *Id.* at 301 ¶ 35, 311 ¶ 75 (Brown, J., dissenting).

¶11          We granted review to determine whether (1) the Commission caused unlawful rate discrimination by consolidating several districts served by one public service corporation into a single district, where substantial cost of service differences existed among the formerly independent districts; and (2) whether the Commission's constitutional

status commands "extreme deference" to its decisions.  These are recurrent issues of statewide concern.  We have jurisdiction pursuant to article 15, section 17 of the Arizona Constitution and A.R.S. § 40-254.01(D).

## DISCUSSION

### I.        Standards for Reviewing the Commission's Decisions

**¶12**        We tackle the second question on which we granted review first, for it is the gateway through which we determine whether the Commission's actions in consolidating the districts and establishing rates are constitutional.

**¶13**        The issue of whether the Commission is entitled to "extreme deference" for its ratemaking decisions is a bit of a red herring, as none of the parties (or even the Commission) argue that it is.  Nor, as we determine in Part II, is extreme deference necessary to find that the Commission's actions are consistent with its constitutional obligations.  Indeed, even as it purported to extend extreme deference, the court of appeals itself acknowledged that de novo review applies to whether the Commission exceeded its constitutional authority.  *Sun City*, 248 Ariz. at 296 ¶ 13. Because the court of appeals attributed the extreme deference requirement to decisions from this Court, *id.* at 297 ¶ 13 ("[W]e remain mindful of the extreme deference our supreme court has traditionally granted to the Commission's ratemaking authority."), we take the opportunity to clarify a court's role in holding the Commission to its constitutional boundaries.

**¶14**        The creation of an elected Corporation Commission separate from the other branches of Arizona government was a proud and distinctive achievement of our Progressive-era constitution's framers. *Johnson Utils., LLC v. Ariz. Corp. Comm'n*, 249 Ariz. 215, 219 ¶¶ 13–14 (2020). An early decision of this Court rather exuberantly proclaimed that the Commission "is, in fact, another department of government, with powers and duties as well defined as any branch of the government, and where it is given exclusive power it is supreme."  *State v. Tucson Gas, Elec. Light & Power Co.*, 15 Ariz. 294, 306 (1914).  "Its exclusive field," the Court went on to say, "may not be invaded by either the courts, the legislative, or executive."  *Id.*

¶15     This expansive view of the Commission's power has led some to erroneously characterize it as a fourth branch of government. *See, e.g.*, *Ariz. Corp. Comm'n v. Superior Court*, 105 Ariz. 56, 60 (1969). To the contrary, our Constitution is clear that we have only three branches of government: legislative, executive, and judicial. Ariz. Const. art. 3.

¶16     That the Commission is constitutionally created and invested with certain powers hardly makes it unique. *See, e.g.*, Ariz. Const. art. 4, pt. 2, § 1(3)–(23) (Independent Redistricting Commission). On matters delegated specifically to an entity such as the Commission, the courts may not intrude. *See, e.g.*, *Residential Util. Consumer Off. v. Ariz. Corp. Comm'n,* 240 Ariz. 108, 111 ¶ 12 (2016) ("The Commission has full and exclusive power to set 'just and reasonable rates' for public service utilities."). However, even when acting within their spheres of express authority, all governmental bodies remain subject to constitutional constraints and requirements, both general (such as due process) and those specific to the entity. And the "courts bear ultimate responsibility for interpreting [constitutional] provisions." *Forty-Seventh Legis. v. Napolitano*, 213 Ariz. 482, 485 ¶ 8 (2006).

¶17     As to the ratemaking and classification powers at issue here, the Commission's authority is plenary. *Johnson Utils.*, 249 Ariz. at 222 ¶ 25. Because the Commission exercises quasi-judicial powers, we defer to its findings of facts and may disturb its decision only if it is arbitrary, unlawful, or unsupported by substantial evidence. *Id.* Moreover, the Court has consistently ruled that the Commission's decisions are entitled to a presumption of constitutionality. *See, e.g.*, *Residential Util. Consumer Off.*, 240 Ariz. at 111 ¶ 10.

¶18     But as to issues of constitutional and statutory compliance—here, whether the Commission caused unlawful rate discrimination—we do not defer to the Commission's judgment. Our review of such questions is de novo. *Id.*; *cf. Stambaugh v. Killian*, 242 Ariz. 508, 512 ¶ 21 (2017) (noting that courts owe no deference to an agency's interpretation of an unambiguous statute). "Neither the text of section 3, the records of the Arizona Constitutional Convention, nor our prior caselaw state that we must defer to the Commission's interpretation of its own ratemaking authority. Although we certainly recognize the constitutional authority of the Commission, it is our duty to interpret the limit and extent of that authority, including whether the Commission's actions are authorized

under section 3." *Johnson Utils.*, 249 Ariz. at 227 ¶ 52; *see also Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").[2]

**¶19**        A recent court of appeals decision put the point nicely: the Commission's ratemaking authority is plenary, but constitutional requirements set "an outer limit for the Commission's discretion." *Freeport Mins. Corp. v. Ariz. Corp. Comm'n*, 244 Ariz. 409, 411 ¶ 6 (App. 2018). Hence, as the dissent in the court of appeals here correctly observed, "it must still be the province and the duty of the courts to determine (once a rate is prescribed) whether it is just, reasonable, and not discriminatory," as article 15, section 12 of the constitution requires. *Sun City*, 248 Ariz. at 303 ¶ 46 (Brown, J., dissenting).

## II.        The Commission's Actions

**¶20**        Turning to the substantive question, we first note issues that are not before us and that we therefore need not resolve. First, Sun City's petition for review asked whether the Commission's decision to consolidate the districts produced unlawful rate discrimination. The court of appeals also focused on whether the Commission's actions violated the constitutional requirement of just and reasonable rates, but that question was not raised in the petition. *See Sun City*, 248 Ariz. at 296–98 ¶¶ 13–18. Also not before us is whether the Commission's actions violate A.R.S. § 40-334(A) because Sun City did not raise the issue to the Commission and thus has waived it.[3] *Wales v. Ariz. Corp. Comm'n*, 249 Ariz. 263, 269 ¶ 25 (App. 2020). Finally, Sun City does not contest the Commission's factual

---

[2] For that reason, contrary to the Commission's argument, § 40-254.01(A), requiring a challenger to make "a clear and satisfactory showing that the order is unlawful or unreasonable," does not apply in an adjudication of the Commission's constitutional authority. *See, e.g.*, *Tucson Elec. Power Co. v. Ariz. Corp. Comm'n*, 132 Ariz. 240, 243 (1982) (describing that language as a standard of proof, not a constitutional standard).

[3] "A public service corporation shall not, as to rates, charges, service, facilities or in any other respect, make or grant any preference or advantage to any person or subject any person to any prejudice or disadvantage." § 40-334(A). This Court has observed that the statute embodies the nondiscrimination principle from article 15, section 12 of the Arizona Constitution. *Trico Elec. Coop., Inc. v. Senner*, 92 Ariz. 373, 385–86 (1962).

finding that, after full consolidation, all EPCOR customers will receive the "same exact service" regardless of the district in which they reside. *See Sun City*, 248 Ariz. at 299 ¶ 22.

**¶21**         Thus, the legal issue before us is narrow: whether the Commission caused rate discrimination in violation of article 15, section 12 of the Arizona Constitution by fully consolidating several districts served by EPCOR. Whether rates and classifications are "just and reasonable," as required by article 15, section 3, is a separate issue, which is not before us. A rate can be just and reasonable but still be discriminatory if consumers in like circumstances are charged different rates. *See Portland Ry., Light & Power Co. v. R.R. Comm'n of Or.*, 229 U.S. 397 (1913) (better fares charged on railway for some cities and not others). Unlike the "just and reasonable" requirement, the prohibition on discrimination applies only to rates, not classifications. *See* Ariz. Const. art. 15, § 12; § 40-334(B).

**¶22**         Sun City argues that full consolidation is unconstitutional because it creates discriminatory rates, in that its residents will pay far higher rates than before. This discrimination results, it asserts, because the Commission disregarded "cost causation" in setting the rates—that is, the amount it actually costs to provide service to the distinct communities within the consolidated district. The Commission counters that it considered multiple cost-causation studies, and that its aims were to reduce rate disparity among the communities, reduce rate shock, and create a more equitable system of paying for future capital expenditures. Ultimately, the crux of the dispute is whether it is unconstitutionally discriminatory to charge a uniform rate for components of a district that had divergent rates before they were consolidated.

**¶23**         At first blush, it seems counterintuitive that rates that become uniform can be discriminatory. But Sun City cites a case involving the Federal Energy Regulatory Commission ("FERC") for precisely that proposition. In *Alabama Electric Cooperative, Inc. v. FERC*, the United States Court of Appeals held that under the Federal Power Act § 205, 16 U.S.C. § 824d, a single rate for two wholesale groups may be discriminatory. 684 F.2d 20, 27 (D.C. Cir. 1982). "While the typical complaint of unlawful rate discrimination is leveled at a rate design which assigns different rates to customer classes which are similarly situated, a single rate design may also be unlawfully discriminatory," the court reasoned. *Id.* That would be true, the court concluded, "[i]f the costs of providing service to one group are

different from the costs of serving the other." *Id.*; *cf. Glacier State Tel. Co. v. Alaska Pub. Util. Comm'n*, 724 P.2d 1187, 1191 (Alaska 1986) (holding that "when the rate structure is such that one class of customers subsidizes another, discrimination may pass beyond its permitted scope").

**¶24** The Federal Power Act, like our Constitution, mandates "just and reasonable" rates. 16 U.S.C. § 824d(a). However, as to discrimination, the Act states that no public utility shall "make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage" nor "maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect." 16 U.S.C. § 824d(b).

**¶25** By contrast, our Constitution provides that "no discrimination in charges, service, or facilities shall be made between persons or places for rendering a like and contemporaneous service." Ariz. Const. art. 15, § 12. We are obliged to interpret constitutional language according to its plain meaning. *Morrissey v. Garner*, 248 Ariz. 408, 410 ¶ 8 (2020). Our discrimination provision does not contain the undue preference, advantage, or prejudice language contained in the Federal Power Act. And while the Federal Power Act forbids companies from maintaining "any unreasonable difference in rates," our provision on its face creates a categorical prohibition against "discrimination in charges . . . for rendering a like and contemporaneous service." 16 U.S.C. § 824d(b); Ariz. Const. art. 15, § 12.

**¶26** Arizona cases construing the discrimination provision are sparse, but they apply our constitutional language categorically. In *Town of Wickenburg v. Sabin*, the Court noted that "[t]he law on discrimination as applied to public service corporations generally is well settled" and held that "[t]he charges must be equal to all for the same service under like circumstances." 68 Ariz. 75, 77 (1948) (quoting 4 Eugene McQuillan, *Mun. Corps.* § 1829 (2d. ed. 1937)). "A public service corporation is impressed with the obligation of furnishing its service to each patron at the same price it makes to every other patron for the same or substantially the same or similar service." *Id.*; *accord Trico*, 92 Ariz. at 386. This standard reflects precisely the language of the discrimination provision.

**¶27** The rates here satisfy that standard: following a transition period, which presumably was established to avoid rate shock, the rates for

all EPCOR customers will be identical.  The ultimate rate is based on the Commission's finding, undisputed here, that all patrons would receive "a like and contemporaneous service."[4]  *See* Ariz. Const. art. 15, § 12.  Under those circumstances, had the Commission *not* established rate parity, the disparate rates could be subject to a discrimination challenge.  *See Sabin*, 68 Ariz. at 80 (concluding that charging one customer a deposit fee that was not required of others similarly situated was discriminatory).

**¶28**　　　Sun City argues that combining multiple communities with different costs of service into a single district with uniform rates renders the consolidation impermissibly discriminatory.  That argument fails for multiple reasons.

**¶29**　　　First, the discrimination provision of article 15, section 12, by its plain terms, pertains to "charges, service, or facilities."  By contrast, the Commission's power to consolidate emanates from article 15, section 3, which gives the Commission "full power to . . . prescribe just and reasonable classifications."  The term "classification" is undefined, but its plain meaning is quite broad, encompassing any grouping.  *See Classification*, Black's Law Dictionary (11th ed. 2019).  Prescribing just and reasonable classifications is part of the Commission's plenary authority, *see Johnson Utils.*, 249 Ariz. at 221 ¶ 21, and we will find the Commission's actions pursuant to its plenary powers unlawful only if they are arbitrary, unlawful, or unsupported by substantial evidence, *id.* at 222 ¶ 25.  We

---

[4] Sun City did not challenge this finding in its petition for review and we did not grant review to consider its efficacy.  Sun City did challenge the finding in response to an amicus brief, but that is insufficient and too late to put the matter before us.  *See Bennett v. Napolitano*, 206 Ariz. 520, 525 ¶ 21 (2003).  Even so, "like and contemporaneous service" in article 15, section 12 by its terms refers to the service provided, not its cost.  Costs are properly considered in the context of determining whether rates are just and reasonable, which is not before us.  Regardless, we accept the Commission's factual finding of like and contemporaneous absent an abuse of discretion, which has not been demonstrated here.  *See* § 40-254.01(A); *Sun City*, 248 Ariz. at 297 ¶ 14 (citing *Simms v. Round Valley Light & Power Co.*, 80 Ariz. 145, 154 (1956)).

reiterate that unlike rates, classifications are not subject to the discrimination provision of article 15, section 12.

**¶30**      Likewise, cost causation is not pertinent to the discrimination analysis.  If the rates are equal for like and contemporaneous service, they are not discriminatory.  In contrast, cost of service—by well-established Commission practice, as it has acknowledged here—is highly relevant to setting just and reasonable rates.  *See e.g.*, *Ala. Elec.*, 684 F.2d at 27 (observing that "to determine whether rates are just and reasonable, it has come to be well established that electrical rates should be based on the costs of providing service to the utility's customers, plus a just and fair return on equity").  The court of appeals concluded that the record establishes that the Commission considered cost-causation evidence, *Sun City*, 248 Ariz. at 297–98 ¶¶ 15–18, and we agree.

**¶31**      It may be that, in a given case, the Commission may establish different rates for constituent classes within a single district based on cost of service.  In such circumstances, cost causation may be a *defense* to a claim of discriminatory rates.  *See, e.g.*, *Jung v. City of Phoenix*, 160 Ariz. 38, 41 (1989); *City of Riverside v. FERC*, 765 F.2d 1434, 1440 (9th Cir. 1985).  That is not the scenario presented here.

**¶32**      We conclude that the rates approved by the Commission for the fully consolidated EPCOR district do not violate article 15, section 12 of the Arizona Constitution.

## CONCLUSION

**¶33**      We affirm the Commission's decision, and we affirm the decision of the court of appeals, but we vacate paragraphs 13–14 and 19–23 of its opinion.

BOLICK, J., concurring:

**¶34**     It is hard not to commiserate with the Sun City residents who face a massive rate hike.  For that reason, I take the unusual step of writing further to briefly examine the legal structure that compels our decision.  *Cf. Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149 (10th Cir. 2016) (Gorsuch, J.) (concurring in his own opinion to address the "elephant in the room").

**¶35**     Our state's policy, embodied in our constitution, "is one of regulated monopoly over free-wheeling competition."  *James P. Paul Water Co. v. Ariz. Corp. Comm'n*, 137 Ariz. 426, 429 (1983).  Establishing an independent, elected Corporation Commission was part of the effort by our constitution's framers "to protect the public from corporate abuses." *Johnson Utils.*, 249 Ariz. at 219 ¶ 13.  From my vantage point, the model has not fulfilled this aspiration.  *See, e.g.*, *id.* at 232–239 ¶¶ 82–118 (Bolick, J., concurring in part and dissenting in part).

**¶36**      In a competitive market, were Sun City residents faced with a sizable rate increase, their recourse would be simple: choose a different company with lower rates.

**¶37**     In the current closed monopoly system, a simple phone call hardly suffices.  To obtain recourse for higher rates requires consumers to engage in a costly, lengthy, and labyrinthian administrative process, facing armies of lobbyists and lawyers with vast experiential and resource advantages.  It is a process in which the odds, to paraphrase *The Hunger Games*, are decidedly not in their favor.

**¶38**     Indeed, Commissioner Bob Burns noted in his dissenting opinion that nearly three-quarters of EPCOR's customers opposed consolidation.  "In other words," Commissioner Burns wrote, "the losers greatly outnumbered the winners, which is an upside-down formula for effective public policy-making."  But this is the system we have, and the Court is constitutionally obliged to enforce it.

**¶39**     What we are *not* constitutionally obliged to do, however, is to add to the already weighty burdens inherent in the system by applying a

judicially manufactured presumption of constitutionality to government decisions when they are challenged in court. *Supra* ¶¶ 17–18. As I have argued elsewhere, "[i]t is essential to our system of justice, and to its endurance, that every person enter the courtroom on a level playing field." *State v. Arevalo*, 249 Ariz. 370, 378 ¶ 30 (2020) (Bolick & Pelander, JJ., concurring). Our review of the constitutionality of the Commission's actions is not really de novo if we begin with the presumption that the Commission will prevail. The presumption is especially discordant in a state whose constitution endeavors relentlessly to prevent abuses of government power, especially when exercised in concert with private interests. Fighting city hall, much less a powerful state agency whose regulatory sweep touches the lives of every Arizonan, is tough enough without judicially created doctrines that make the burden more onerous.