IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**THOMAS P. MORRISSEY, INDIVIDUALLY,**
*Plaintiff/Appellee,*


*v.*


**LOGAN STAN GARNER, INDIVIDUALLY AND AS CHAIR OF UNITE PAYSON; ET AL.**
*Defendants/Appellants.*

———————————

**LOGAN STAN GARNER, INDIVIDUALLY AND AS CHAIR OF UNITE PAYSON; KIM CHITTICK, INDIVIDUALLY AND AS TREASURER OF UNITE PAYSON,**
*Counter-Claimants/Cross-Claimants/Cross-Appellants,*


*v.*


**THOMAS P. MORRISSEY, IN HIS OFFICIAL CAPACITY AS PAYSON MAYOR, ET AL.,**
*Counter-Defendants/Cross-Defendants/Cross-Appellees.*

———————————

No. CV-19-0271-AP/EL
Filed April 21, 2020

———————————

Appeal from the Superior Court in Gila County
The Honorable Randall Warner, Visiting Judge from Maricopa County
No. S0400CV201900287
**AFFIRMED**

———————————

COUNSEL:

Timothy A. La Sota, Timothy A. La Sota, PLC, Phoenix, Attorney for Thomas P. Morrissey (in his individual capacity)

Eric H. Spencer, Ryan J. Regula, Snell & Wilmer, L.L.P., Phoenix, Attorneys for Logan Stan Garner, Kim Chittick and Unite Payson

Aaron Arnson, Pierce Coleman, PLLC, Scottsdale, Attorney for Silva Smith, Thomas P. Morrissey (in his official capacity), Jim Ferris, Chris Higgins, Steven L. Smith, Janell Sterner, Suzy Tubbs-Avakian, Barbara Underwood and Town of Payson

Jeff Dalton, Gila County Attorney's Office, Globe, Attorney for Sadie Jo Bingham, Tommie Martin, Tim R. Humphrey and Woody Cline

————————————

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and JUSTICES GOULD, LOPEZ, BEENE and MONTGOMERY joined.

————————————

JUSTICE BOLICK, opinion of the Court:

¶1            On December 6, 2019, this Court issued an order affirming the trial court's ruling that defendants (collectively, "Unite Payson") did not obtain sufficient signatures to generate a recall election of plaintiff Mayor Thomas P. Morrissey because the town clerk calculated the number of required signatures based on a faulty reading of article 8, part 1, section 1 of the Arizona Constitution (the "Recall Provision"). In this opinion, we explain our conclusion that the Constitution establishes the requisite number of signatures based upon the number of voters in the most recent election at which the candidate for the office at issue was voted into office.

## I.     BACKGROUND

¶2         The Recall Provision of the Arizona Constitution provides for the recall of an elected official.  As pertinent here, it states that the "number of . . . electors as shall equal twenty-five per centum of the number of votes cast at the last preceding general election for all of the candidates for the office held by such officer, may by petition, which shall be known as a recall petition, demand his recall."  Ariz. Const. art. 8, pt. 1, § 1; *see also* A.R.S. § 19-201(A).

¶3         Pursuant to Payson Town Code ("Code") § 30.07(A)(1), if one candidate for mayor or council receives a majority of votes in the nonpartisan primary election, the candidate is declared elected on the date of the general election.  If not, a runoff between the top two candidates is held at the general election.  Code § 30.07(A)(3).  Morrissey received a majority of the votes cast for mayor in the August 28, 2018 primary election and was declared elected at the November 6, 2018 general election.

¶4         Unite Payson, a political action committee, took out a petition to recall Morrissey on August 12, 2019.  Because all Payson mayoral elections since 2002 were decided by primary election, the town clerk determined that the number of signatures required for the recall petition was twenty-five percent of the number of votes cast in the 2002 general election, or 770 signatures.  Unite Payson filed 970 signatures with the town clerk, who invalidated forty signatures and transmitted the remainder to the Gila County Recorder.  The recorder invalidated 109 signatures, leaving 821 valid signatures, whereupon the town clerk called a recall election for March 10, 2020.

¶5         Morrissey sued to enjoin the recall election, arguing that the required number of signatures should be based on twenty-five percent of the votes cast in the 2018 primary at which he was elected, which would be 1,255.  The trial court agreed with Morrissey.  The court noted that the Recall Provision's plain language "yields no answer" because "[t]he last general election was 17 years ago, and the preceding election was the 2018 primary."  Although the Code referred to the August 2018 election as a

3

primary, the court reasoned that the "nomenclature is less important than the function that election served, which was to elect the Mayor." Although neither the 2002 general election nor the 2018 primary election was a "perfect fit" with the constitutional language, the court concluded that using the 2018 primary election as the baseline for recall signatures is "more consistent with the Constitution's purpose of measuring the number of signatures needed to call a recall by the present state of the electorate. And an election from 17 years ago cannot reasonably be considered 'preceding.'" The court enjoined the recall election based on insufficient signatures.

¶6        Unite Payson appealed to this Court. We have jurisdiction pursuant to A.R.S. § 19-208.04.


**DISCUSSION**

¶7        This case turns entirely on constitutional interpretation, which we review de novo. *Gallardo v. State*, 236 Ariz. 84, 87 ¶ 8 (2014).


¶8        As a general rule of constitutional interpretation, "clear and unambiguous language is given its plain meaning unless absurd or impossible consequences will result." *Dunn v. Indus. Comm'n of Ariz.*, 177 Ariz. 190, 194 (1994). We examine constitutional language in its overall context to effectuate its purpose. *Saban Rent-a-Car LLC v. Ariz. Dep't of Revenue*, 246 Ariz. 89, 95 ¶ 21 (2019). We strive "to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019).


¶9        "Ambiguity arises when the [provision's] language is reasonably susceptible to differing interpretations," *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016), or "if there is uncertainty about the meaning or interpretation of a statute's terms." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268 (1994). When a provision is ambiguous, we look to secondary sources such as dictionaries or legislative history to discern its meaning. *Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19, 28 ¶ 32 (2016).

**¶10**　　　　Unite Payson argues that the Recall Provision is unequivocal: the "last preceding general election" is the most recent general election for mayor, which occurred in 2002. Morrissey argues for a more functional definition of "general election" to encompass a primary election that determines the final outcome, which in his case was the 2018 primary election. As both arguments are plausible and the Recall Provision does not define "general election," its meaning is ambiguous.

**¶11**　　　　Unfortunately, no constitutional records pertaining to the meaning of the Recall Provision exist to guide our inquiry. Dictionary definitions of "general" and "primary" elections reflect the functional approach urged by Morrissey. A primary is "a preliminary election at which direct nominations of candidates for office are made." *Primary Election*, Webster's New International Dictionary (2d ed. 1944); *see also Primary Election*, Webster's Third New International Dictionary (3d ed. 2002) ("an election in which qualified voters nominate or express a preference for a particular candidate"). A "general election" is one "in which every constituency chooses a representative." *General Election*, Webster's (1944); *see also General Election*, Black's Law Dictionary (9th ed. 2009) ("[t]he process of selecting a person to occupy an office"). Thus, a primary is a preliminary election that decides which candidates proceed to the general election, while a general election is one at which officeholders are finally chosen.

**¶12**　　　　This Court has applied that functional approach in defining general and primary elections. As we stated in *Kyle v. Daniels*, a primary election is "a competition for the party's nomination, no more, no less, and does not elect a person to office but merely determines the candidate who will run for the office in the general election." 198 Ariz. 304, 306 ¶ 10 (2000). "In contrast, a general election actually determines which candidate will hold the office." *Id.*

**¶13**　　　　Our Constitution's general procedures for primary and general elections also reflect this approach. Article 7, section 10 provides for primary elections to "provide for the nomination of candidates" to "all elective State, county, and city offices." Meanwhile, article 7, section 11

provides that "[t]here shall be a general election of representatives in congress, and of state, county, and precinct officers" on a specified date in November in even-numbered years.

¶14 However, article 7, section 11 omits any reference to cities or towns. As a matter of constitutional interpretation, we presume that where like-natured entities are listed but others are not, the omitted entities were meant to be excluded. *See City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211 ¶ 13 (2019) ("*Expressio unius est exclusio alterius*—the expression of one item implies the exclusion of others—is appropriate when one term is reasonably understood as an expression of all terms included in the statutory grant or prohibition."). This principle applies even more strongly given that cities and towns are expressly covered by article 7, section 10's provision governing primary elections but are not included in article 7, section 11. Thus, we conclude that cities and towns are meant to be excluded from the constitutional provision establishing the purpose and timing for general elections.

¶15 The legislature filled the gap left by the Constitution, expressly authorizing cities and towns to use primary elections to elect local officials. Arizona Revised Statutes § 9-821.01(D) provides that "a city or town may by ordinance provide that at the primary election any candidate for the office of mayor or city council who receives a majority of all votes cast at that election for that office is declared elected to the office for which the person is a candidate, effective as of the date of the general election, and a further election may not be held as to such candidate." Section 9-821.01(F) provides further that where no candidate receives a majority of votes in the primary election, the contest will proceed to a "general or runoff election."

¶16 Through these provisions, the legislature, acting pursuant to its constitutional authority, provided to cities and towns a choice to use the primary not just to nominate but also to elect candidates under prescribed conditions. If no candidate receives a majority of votes, the primary whittles down the number of candidates for the general election. But when a candidate receives a majority of votes, the primary effectively functions as the general election, for the voters at that election will have chosen who

will serve. Indeed, the statute deems that a candidate for mayor or council receiving a majority of votes in the primary election will not be "declared elected" until the date of the general election. For purposes of the Recall Provision, the votes cast in a primary election determine the general election. A.R.S. § 9-821.01(D).

¶17 This is precisely the system Payson adopted, providing for the primary election to serve as the general election when a majority of voters choose a candidate for mayor. *See* Code § 30.07. Morrissey was declared elected in November 2018 by a majority of the votes cast in the August 2018 primary election. Thus, the town clerk should have based the number of signatures required for a recall election on twenty-five percent of the votes cast in that election.

¶18 A different reading would produce anomalous results. For instance, a town (like Payson) in which the last general election was many years ago might now have a markedly smaller or larger population, thus linking the required signatures to a number bearing little relationship to the election at which the relevant official was elected. And as Morrissey points out, a new city or town adopting a system like Payson's that elected its first mayor at a primary election would never have held a general election for that office. In such circumstances, the reading of the constitutional provision urged by Unite Payson would thwart a recall. Treating a primary at which candidates are effectively elected as a general election, as the Constitution and statutes permit cities and towns to do, is the proper basis for determining the requisite number of signatures for a recall petition.

**CONCLUSION**

¶19 For the foregoing reasons, we affirm the trial court's ruling.