IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**ROBERT BURNS,**
*Plaintiff/Appellant,*

*v.*

**ARIZONA PUBLIC SERVICE COMPANY, ET AL.,**
*Defendants/Appellees.*

———————————

No. CV-21-0080-PR
Filed September 27, 2022

———————————

Appeal from the Superior Court in Maricopa County
The Honorable Daniel J. Kiley, Judge
No. CV2017-001831
**REVERSED AND REMANDED**

———————————

Opinion of the Court of Appeals, Division One
250 Ariz. 607 (App. 2021)
**VACATED**

———————————

COUNSEL:

William A. Richards (argued), Richards & Moskowitz PLC, Phoenix,
Attorneys for Robert Burns

Mary R. O'Grady, Joseph N. Roth, Matthew J. Stanford, Osborn Maledon,
P.A., Phoenix; Matthew E. Price (argued), Jenner & Block LLP, Washington,
DC, Attorneys for Arizona Public Service Company, et al.

Edward F. Novak, Jonathan G. Brinson (argued), Polsinelli PC, Phoenix,
Attorneys for Arizona Corporation Commission, et al.

Sarah L. Barnes, Broening Oberg Woods & Wilson, P.C., Phoenix, Attorneys
for (*Former*) Commissioner Boyd Dunn

———————————

JUSTICE BOLICK authored the Opinion of the Court, in which JUSTICES BEENE, MONTGOMERY, and KING joined. VICE CHIEF JUSTICE TIMMER dissented. [*]

———————————

JUSTICE BOLICK, Opinion of the Court:

¶1        In this case we hold that the Arizona Corporation Commission ("Commission") acting by a majority of its commissioners may not prevent an individual commissioner from exercising investigatory powers pursuant to article 15, section 4 of the Arizona Constitution; and that a commissioner aggrieved by such action may seek judicial recourse by way of declaratory judgment pursuant to A.R.S. §§ 12-1831 to -1846.

## BACKGROUND

¶2        During the 2014 primary and general elections for the Commission, allegations were made that two elected commissioners received anonymous campaign contributions from Pinnacle West, using funds derived from Arizona Public Service Co. ("APS"). Pinnacle West is the holding company of APS, a public service corporation ("PSC"). In November 2015, Robert Burns, then a member of the Commission, requested spending reports from APS regarding the 2014 election cycle. APS did not comply. Subsequently, Burns requested and received an opinion from the Attorney General, who concluded that A.R.S. § 40-241 confers power on individual commissioners to "gather information regarding a PSC's political and charitable contributions, and lobbying expenditures, by inspecting the books and records of a PSC, and examining under oath PSC personnel." Op. Ariz. Att'y Gen. I16-005 at 9 (2016).

¶3        In August 2016, the four other commissioners voted to refuse to fund Burns' investigation into APS's records for its pending rate-making case before the Commission (the "Rate Case"). In turn, later that month

———————————

[*] Chief Justice Robert Brutinel and Justice John R. Lopez IV have recused themselves from this case.

Burns issued two subpoenas to APS in his capacity as a single commissioner. Both subpoenas sought information regarding donations made to independent expenditure groups to support Commission candidates in the 2014 election. In February 2017, Burns again issued two similar subpoenas to APS during a new Commission proceeding (the "Rule-Making Case"). APS did not fully comply with either the 2016 or 2017 subpoenas.

¶4 Shortly after, in March 2017, Burns sued APS for declaratory relief, arguing that individual commissioners have authority to demand compliance with subpoenas without the approval from other commissioners. APS moved to dismiss, arguing that Burns failed to exhaust his administrative remedies as to both sets of subpoenas. Ruling in favor of APS, the superior court stayed both proceedings so that Burns could first exhaust his administrative remedies.

¶5 During the Rate Case, Burns attempted to call six witnesses, including APS and Pinnacle West's president and board chairman. The administrative law judge ("ALJ") declined to call the witnesses without approval from the other Commission members. In response, Burns sought emergency relief from the ALJ. He also moved to disqualify two commissioners, alleging they had received "dark money" from APS and Pinnacle West during the 2014 election. The ALJ did not rule on either motion.

¶6 Burns next sought compliance with his issued subpoenas. On June 20, 2017, the Commission held a public meeting to consider his motions. An interlocutory order was issued on June 27, 2017 on behalf of the Commission and approved by the four other commissioners. The order denied Burns' motions. In the interlocutory order, the other commissioners found that Burns' motions sought information that was irrelevant to the Rate Case; the subpoenas were overly broad, burdensome, and would not produce admissible evidence; and Burns' requests for witnesses were irrelevant and would not lead to admissible evidence.

¶7 In response, Burns sought leave to amend his superior court complaint to challenge the interlocutory order and add the Commission and the four other individual commissioners as defendants. The superior court granted Burns' motion to amend, and on August 4, 2017, he timely

filed his First Amended Complaint. Burns also filed a special action with this Court on August 20, 2017. The special action challenged the denial of Burns' motion to suspend the Rate Case to investigate grounds for disqualifying the other commissioners. This Court declined jurisdiction.

¶8 Shortly after, the other commissioners reached a settlement agreement that the ALJ approved over Burns' opposition. Following the settlement, both APS and the Commission moved to dismiss Burns' First Amended Complaint. The superior court held that (i) the case was not moot; (ii) the request for declaratory relief was appropriate to determine the commission's investigatory powers; (iii) the subpoenas did not improperly interfere with the legislature's or Commission's powers; and (iv) Burns had the authority to issue the subpoenas as an individual commissioner. However, the court also ruled that although individual commissioners may issue subpoenas, the power to enforce subpoenas rests with the Commission as a body. For that reason, the court dismissed Burns' First Amended Complaint.

¶9 Following that decision, Burns sought leave to amend his complaint a second time to request specific declaratory relief on the superior court's rulings in his favor, and to argue his due process right to investigate and present facts about APS's financial support to the commissioners' campaigns. The superior court granted leave to amend in part, denying Burns' request for declaratory relief as to its prior rulings.

¶10 After Burns' Second Amended Complaint was filed, APS and the Commission moved to dismiss it. On January 17, 2019, the superior court dismissed the case and entered judgment against Burns. The court held that Burns lacked standing to assert his due process argument. Additionally, the court held that Burns was not legally entitled to initiate and maintain an investigation to disqualify other commissioners.

¶11 Burns timely appealed to the court of appeals challenging the dismissal of his two amended complaints. The court of appeals affirmed the trial court's ruling, holding that individual commissioners lack authority to enforce investigatory subpoenas in rate-making cases because that authority rests solely with the Commission and a majority of its

commissioners. *Burns v. Ariz. Pub. Serv. Co.*, 250 Ariz. 607, 614–15 ¶ 34 (App. 2021).

¶12        We granted review on two issues. First, whether the Arizona Constitution allows a majority of commissioners to prevent any single commissioner from exercising the investigatory powers expressly granted to each in article 15, section 4. Second, whether the Arizona Uniform Declaratory Judgment Act ("UDJA") grants a commissioner standing to seek a declaration of his and his colleagues' rights. These are significant issues of statewide concern. We have jurisdiction over the appeal pursuant to article 6, section 5 of the Arizona Constitution.

## DISCUSSION

¶13        We note at the outset that the questions on which we granted review are narrow. Moreover, we focus only on the subpoenas issued by Burns in the Rate Case that the other commissioners effectively quashed. Therefore, we will neither resolve all the issues addressed in the courts below nor the appropriate scope of Commission rules and proceedings going forward. But we agree with the court of appeals that the questions as presented are important and that we should resolve them even though Burns and his colleagues are no longer commissioners. *Burns*, 250 Ariz. at 611 ¶ 14. Because they present purely issues of law, we review them de novo. *Johnson Utils. v. Ariz. Corp. Comm'n*, 249 Ariz. 215, 219 ¶ 11 (2020).

¶14        The Commission is established by article 15 of the Arizona Constitution. Its creation arose from the framers' determination "to protect the public from corporate abuses and overreaching." *Johnson Utils.*, 249 Ariz. at 219 ¶ 13. The Commission has plenary authority to set rates for PSCs and permissive authority to regulate PSCs for the health, safety, comfort, and convenience of their customers, employees, and the public. Ariz. Const. art. 15, § 3; *see also Johnson Utils.*, 249 Ariz. at 220–21 ¶¶ 19, 21. As relevant here, the Commission also has authority to investigate records and affairs of publicly traded corporations and PSCs. Ariz. Const. art. 15, § 4. This Court has held that the Commission has "broad powers to conduct public or private investigations to determine whether any person or corporation has violated or is about to violate" Arizona laws and may "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Polaris Int'l Metals Corp. v. Ariz. Corp. Comm'n*, 133 Ariz. 500, 506 (1982) (quoting *U.S. v. Morton Salt Co.*, 338

U.S. 632, 642–43 (1950)).   Moreover, the legislature may add to the Commission's powers and responsibilities.  *See* Ariz. Const. art. 15, § 6 ("The law-making power may enlarge the powers and extend the duties of the corporation commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the commission may make rules and regulations to govern such proceedings.").

**¶15**        Even within its plenary ratemaking authority; however, the Commission remains "subject to constitutional constraints and requirements, both general (such as due process) and those specific to the entity." *Sun City Home Owners Ass'n v. Ariz. Corp. Comm'n*, 252 Ariz. 1, 5 ¶ 16 (2021).  Those boundaries are subject to judicial review.  *See Johnson Utils.*, 249 Ariz. at 227 ¶ 52 ("Although we certainly recognize the constitutional authority of the Commission, it is our duty to interpret the limit and extent of that authority.").

### A.   An Individual Commissioner's Investigatory Authority

**¶16**        Burns argues that his authority as an individual commissioner emanates from article 15, section 4, which states as follows:

> The corporation commission, and the several members thereof, shall have power to inspect and investigate the property, books, papers, business, methods, and affairs of any corporation whose stock shall be offered for sale to the public and of any public service corporation doing business within the state, and for the purpose of the commission, and of the several members thereof, shall have the power of a court of general jurisdiction to enforce the attendance of witnesses and the production of evidence by subpoena, attachment, and punishment, which said power shall extend throughout the state. Said commission shall have power to take testimony under commission or deposition either within or without the state.

Burns asserts that this constitutional text specifically authorizes not only the Commission as a whole, but each of its "several commissioners," to inspect

and investigate PSC records and affairs and to compel the testimony of witnesses and production of evidence by subpoena and otherwise.

¶17            Burns further identifies as a source of authority A.R.S. § 40-241(A), which provides as follows:

> The commission, each commissioner and person employed by the commission may, at any time, inspect the accounts, books, papers and documents of any public service corporation, and any of such persons who are authorized to administer oaths may examine under oath any officer, agent or employee of such corporation in relation to the business and affairs of the corporation.

Burns also notes that Arizona Administrative Code R14-3-109(P) provides that "[t]he Commission, a Commissioner, or any party to any proceeding before it may cause the depositions of witnesses to be taken in the manner prescribed by law and of the civil procedure for the Superior Court of the state of Arizona."

¶18            APS and the Commission counter with several arguments. First, they note that under article 15, section 3 of the Arizona Constitution, the Commission's power over ratemaking is plenary, *see Johnson Utils.*, 249 Ariz. at 221 ¶ 21, and thus, they contend the Commission controls the proceedings that lead to ratemaking. They argue that section 4, which Burns cites as the constitutional source of his authority to act unilaterally, only provides "that the commissioners, when acting on behalf of the commission and not independently of the commission, have authority." They also assert that under section 6, the Commission has the power to establish rules and procedures unless and until the legislature does so. And section 19 invests the Commission with the authority to enforce its rules, regulations, and orders, subject to the limitations prescribed in section 16.

¶19            Beyond these constitutional provisions, the Commission and APS cite A.R.S. § 40-243(A), which provides that "[a]ll hearings and investigations before the commission or a commissioner shall be governed by this article, and by rules of practice and procedure adopted by the commission." The Commission argues that when it quashed Burns'

subpoena, it was acting pursuant to R14-3-109(O), which empowers it to "[q]uash the subpoena if it is unreasonable or oppressive."

**¶20**        Although not addressing the specific subpoenas at issue here, the Attorney General, in his opinion responding to Burns' inquiry, concluded that an individual commissioner is authorized to unilaterally issue subpoenas to PSCs, pursuant to both article 15, section 4 of the Arizona Constitution and A.R.S. § 40-241(A). Op. Ariz. Att'y Gen. I16-005 at 5. In particular, the Attorney General observed that "[t]he plain language of Section 40-241(A) specifically refers to not just '[t]he commission' but also 'each commissioner.'" *Id.* at 8 (second alteration in original).

**¶21**        The court of appeals, by contrast, agreed with APS and the Commission. It noted that under article 15, section 6 of the Arizona Constitution, the Commission is authorized to make rules and regulations to govern proceedings before it. *Burns*, 250 Ariz. at 612 ¶ 20. The Commission quashed Burns' subpoena under one such rule, R14-3-109(O), and the court held that its "review of a Commission determination not to enforce a subpoena is deferential." *Id.* ¶ 23.

**¶22**        With respect to the narrow issue presented here of a single commissioner's authority to inspect the books of a PSC and depose its officials, we agree with the Attorney General and Burns: the principal source of that authority is article 15, section 4 of the Arizona Constitution. The court of appeals quoted its language, *Id.* ¶ 19, but then failed to apply it, instead subordinating the authority provided there to the Commission's general rulemaking authority. That was in error.

**¶23**        Our role in constitutional interpretation is to construe the text, when possible, in accord with its plain meaning. *Morrissey v. Garner*, 248 Ariz. 408, 410 ¶ 8 (2020). We seek to give effect to every word, so as to render superfluous none of the text. *Id.* We also read the provision at issue in its broader context. *Id.*

**¶24**        Article 15, section 4 confers the power to inspect and investigate upon "[t]he corporation commission, and the several members thereof." Ariz. Const. art. 15, § 4. It further provides that "for the purpose of the commission, and of the several members thereof, [they] shall have

the power of a court of general jurisdiction to enforce the attendance of witnesses and the production of evidence by subpoena" or otherwise. *Id.*

¶25 "Several" in this context means separate, respective, or individual. *Several*, Merriam-Webster, https://www.merriam-webster.com/dictionary/several (last visited Sept. 21, 2022)[1]; *cf.* U.S. Const. art. 1, § 2, cl. 1 ("The House of Representatives shall be composed of Members chosen . . . by the People of the several States."). Were it to mean the collective body, no reason would exist to conjoin the Commission "and the several members thereof." Ariz. Const. art. 15, § 4. Moreover, the drafters' use of a comma following "[t]he corporation commission" indicates that what follows is a separate category. *See, e.g.*, *U.S. v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (stating that where two nouns are separated by a comma as well as "and," each "stands independent" of the other); *State v. Feldstein*, 134 Ariz. 129, 130 (App. 1982).

¶26 The Commission argues that the introduction to the second part of the provision—"for the purpose of the commission"—restricts the investigatory powers to the purpose established by the commission. Ariz. Const. art. 15, § 4. But again, this preface is conjoined with "and of the several members thereof." Reading section 4 in its totality, giving effect to every word, the conclusion is inescapable: it provides to the Commission, *and* to its individual members, the authority to investigate and inspect, and the power of a court of general jurisdiction to compel the attendance of witnesses and the production of documents through specified means such as a subpoena.

¶27 This interpretation is consistent with the Commission's structure. Our constitution's framers could have provided for a single commissioner. Instead, it comprised the Commission of three members, later enlarged to five, three of whom are elected at one general election and

---

[1] A 1912 dictionary likewise defines "several" to include distinct, separate, different, and various; but also "consisting of a number more than two, but not many." *Several*, New Websterian Dictionary Illustrated 745 (1912). Given that the Commission initially was comprised of only three members, "a number more than two" would comprise the entire Commission, rendering meaningless "the several members thereof." Ariz. Const. art. 15, § 4. We therefore conclude that the meaning of "several" in this context means the individual commissioners.

two the next. Ariz. Const. art. 15, § 1(B). That structure facilitates a Commission that acts as a collective body in most instances, but with individual members authorized to act unilaterally in specified circumstances.

¶28 Moreover, other provisions of article 15 (§§ 3, 5, 6, 14, 19) confer authority exclusively upon the "commission," whereas "and the several members thereof" is confined to section 4. Where the drafters used different language in different provisions, we imply that a different meaning is intended. *Rochlin v. State*, 112 Ariz. 171, 176 (1975) ("If the authors of the constitution had intended the sections to mean the same thing they could have used the same or similar language. The fact that they did not, requires the conclusion that the sections were meant to be different."). The framers plainly meant to authorize not only the Commission but also individual commissioners, for their purposes, to issue investigatory subpoenas.

¶29 Reading article 15 in its entirety dictates that any other interpretation would render section 4 superfluous. It would expressly vest powers in individual commissioners but then subordinate that right to the unreviewable determinations of other commissioners. Burns' allegations demonstrate how untenable such a construction is, whereby a commissioner's investigation into possible improprieties concerning his colleagues can be squelched by the very subjects of the investigation.

¶30 The court of appeals emphasizes the regulatory authority conferred upon the Commission by article 15, section 6 of the Arizona Constitution to "make rules and regulations" to govern proceedings. *Burns*, 250 Ariz. at 612 ¶ 20. We do not read separate constitutional provisions to determine which prevails over the other; rather, we read them to harmonize the provisions and give effect to each. *State v. Osborne*, 14 Ariz. 185, 204 (1912) (observing that "each and every clause in a written [c]onstitution has been inserted for some useful purpose" and "whenever it is possible to do so, each provision must be construed so that it shall harmonize with all others without distorting the meaning of any of such provisions"). Giving all provisions due meaning, the Commission possesses authority to the

extent provided to create rules and procedures but not to cancel the individual commissioners' express rights.

¶31 Nor does the fact that the subpoenas were issued in the context of a ratemaking proceeding under article 15, section 3 alter the analysis. Although that section invests the Commission with plenary authority to regulate rates, it neither furnishes additional authority to the Commission to establish procedural rules (which is conferred by section 6) nor cancels an individual commissioner's investigatory powers under section 4. Indeed, as the circumstances here illustrate, it may be especially pertinent for a commissioner to deploy such investigatory powers to determine possible conflicts of interest in a rate case. And as we emphasized in *Johnson Utilities*, even the Commission's plenary ratemaking authority is constrained by the constitution. *Johnson Utilities*, 249 Ariz. at 221 ¶ 23. Again, we seek to harmonize the powers and constraints set forth in article 15.

¶32 Moreover, the court of appeals omits a crucial part of the constitutional passage conferring regulatory authority. It cites the language from section 6 that "the commission may make rules and regulations to govern [proceedings instituted by and before it]," *Burns*, 250 Ariz. at 612 ¶ 20 (alteration in original), but fails to acknowledge the temporal limitation immediately preceding it: "until such rules and regulations are provided by law." Ariz. Const. art. 15, § 6. The legislature definitively resolved this very question in A.R.S. § 40-241(A), which authorizes the Commission and "each commissioner" to inspect a PSC's books and papers and to examine PSC officials under oath.

¶33 Though Burns argued he had authority under § 40-241(A), the court of appeals nowhere addressed that statute, instead proceeding directly to the agency's rules, specifically R14-3-109(O). *Burns*, 250 Ariz. at 612 ¶ 21. It is unclear whether R14-3-109 as a whole, or subsection (O) in particular, applies in this context. *See, e.g.*, R14-3-101(A) (providing that the rules shall not "apply to any investigation by the Commission, any of its divisions or its staff"). Regardless, the Commission cannot by administrative fiat erase an individual commissioner's constitutional authority. *See, e.g.*, *Polaris*, 133 Ariz. at 506; *Saguaro Healing LLC v. State*, 249 Ariz. 362, 365 ¶ 19 (2020) (noting "[t]he scope of an agency's power is measured by statute and may not be expanded by agency fiat." (alteration

11

in original) (quoting *Cochise Cnty. v. Ariz. Health Care Cost Containment Sys.*, 170 Ariz. 443, 445 (App. 1991))).

**¶34** That does not mean that the individual commissioner's subpoena powers are without constraint. To the contrary, they are bound by the Commission's own limited constitutional authority, as well as the overarching requirements of due process. *Polaris*, 133 Ariz. at 507. The target of a subpoena may seek judicial recourse through a declaratory judgment action and Arizona Rule of Civil Procedure 45, or other legally authorized recourse. We also do not imply that the fruits of an individual commissioner's investigation are necessarily admissible in a particular Commission proceeding.

**¶35** Likewise, the Commission may adopt and enforce subpoena procedures. *See* A.R.S. § 40-243(A) ("All . . . investigations before the commission or a commissioner shall be governed by this article, and by rules of practice and procedure adopted by the commission."). Such authority clearly encompasses rate cases, which are quasi-judicial proceedings where more formal procedures may be appropriate. But the Commission has not adopted procedures governing subpoenas issued by individual commissioners. It may adopt such procedures so long as they do not abrogate an individual commissioner's constitutional and statutory authority. As the following section suggests, an aggrieved commissioner should seek recourse through a declaratory action in superior court.

### B. Availability of Relief Under the Uniform Declaratory Judgment Act

**¶36** Section 12-1832 provides in relevant part that "[a]ny person . . . whose rights . . . are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." The legislature further provided that "[t]his article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal

relations; and is to be liberally construed and administered." A.R.S. § 12-1842.

**¶37** As we held above, Burns has a statutory right to investigate PSCs. Moreover, we have applied the UDJA to administrative orders. *Polaris*, 133 Ariz. at 504; *see also City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 210 ¶ 9 (2019) (holding that indirect assertion of regulatory authority provides "sufficient injury to provide standing").

**¶38** No party seriously disputes Burns' standing to pursue relief under the UDJA. Rather, the Commission and APS argue that the courts below were correct in denying declaratory relief. On the narrow substantive issue on which we granted review, we disagree and remand to the trial court to determine if any further proceedings are warranted given that Burns no longer serves on the Commission.

## C.  Attorney Fees

**¶39** Per Burns' motion, we award his attorney fees pursuant to A.R.S § 12-348.01, and costs under A.R.S. § 12-1840.

## CONCLUSION

**¶40** We vacate the opinion of the court of appeals, reverse the superior court's denial of summary judgment on the issues before us, and remand the case to that court for any further proceedings consistent with this ruling.

TIMMER, VCJ., Dissenting

¶41        I agree with my colleagues that Burns has standing under the Uniform Declaratory Judgments Act, A.R.S. §§ 12-1831 to -1846, to file this lawsuit.  I also agree that the Arizona Corporation Commission, by majority vote, cannot prevent an individual commissioner from exercising his authority under article 15, section 4 of the Arizona Constitution, to inspect and investigate the affairs of a publicly held corporation or a public service corporation ("PSC").    But I disagree with my colleagues that the Commission prevented Burns from exercising his right to inspect and investigate here by denying several motions Burns filed in APS's rate case.

¶42        As a commissioner, Burns had constitutional authority to inspect and investigate "the property, books, papers, business, methods, and affairs" of APS and its holding company, Pinnacle West Capital Corporation.    *See* Ariz. Const. art. 15, § 4; *see also* A.R.S. § 40-241(A) (authorizing individual commissioners "at any time [to] inspect the accounts, books, papers and documents of any [PSC]").  He exercised this authority outside the rate case.  For example, in 2015 Burns created a "generic docket" to explore PSC's campaign contribution practices.  In that docket, Burns demanded that APS produce a "full report[] of any campaign contributions and indirect contributions to third-party organizations" made during the 2014 election cycle, and later broadened that request to include "funds expended on all political contributions, lobbying, and charitable contributions, *i.e.*, all donations made—either directly or indirectly—by APS or under APS's brand name for any purpose."  APS refused to comply with Burns' demands, but Burns did not enforce the request by issuing a subpoena and apparently dropped the matter in that docket.    *See* Ariz. Const. art. 15, § 4 (empowering an individual commissioner to "enforce the attendance of witnesses and the production of evidence by subpoena, attachment, and punishment").

¶43        APS's rate case began in 2016 when it filed an application to set new utility rates.  The Commission then issued orders setting a procedural schedule, granting several interventions, and consolidating the rate case with two APS audits.  Most of the approximately forty parties in the case reached a settlement agreement that increased APS's base rate, and after reviewing documentation and conducting a seven-day evidentiary hearing, an administrative law judge ("ALJ") recommended that the

Commission approve the new rate as just and reasonable. In 2017, the full Commission, with Burns dissenting, adopted the ALJ's recommendation.

¶44 During the rate case proceedings, Burns renewed his quest to obtain information about APS and Pinnacle West's spending. He issued two subpoenas duces tecum compelling the companies to produce documents and information identifying political and charitable contributions and lobbying and marketing/advertising expenditures from 2011 through 2016. APS and Pinnacle West moved to quash the subpoenas, but the Commission never ruled on the motion. *See* Ariz. Admin. Code R14-3-109(O)(1) (empowering the Commission to quash unreasonable or oppressive subpoenas). Then Burns filed this lawsuit asking the superior court to declare he was entitled to demand compliance with the subpoenas, but the court stayed the suit to give Burns an opportunity to exhaust his administrative remedies by asking the Commission to compel compliance.

¶45 Thereafter, and as pertinent here, Burns filed motions to (1) compel APS and Pinnacle West's compliance with the subpoenas; (2) require the ALJ to call several previously unscheduled witnesses during the evidentiary hearing and permit Burns' private attorney to question those witnesses; and (3) stay the entire rate case until Burns completes his investigation. The Commission, with Burns dissenting, denied the motions, ruling the information sought was irrelevant to the rate case, and the subpoenas were overbroad, unduly burdensome, and sought information outside the 2015 "test year," which was the only year relevant in applying the rate-setting formula. *See Residential Util. Consumer Off. v. Ariz. Corp. Comm'n*, 240 Ariz. 108, 110 ¶ 6 (2016) (describing the formula); R14-2-103(A)(3)(p) (defining "test year").

¶46 The issue here is whether the Commission's ruling in matters properly brought before it in the rate case violated Burns' constitutional authority under article 15, section 4 of the Arizona Constitution, to inspect and investigate. Unlike the majority, I conclude it did not.

¶47 First, even assuming Burns' subpoenas and requests constituted an "investigation" under section 4, nothing in that provision authorized him to compel the other commissioners or the Commission as a whole to enforce his efforts. *See City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 212 ¶ 20 (2019) (noting that the Commission, and necessarily

15

each commissioner by extension, "has no implied powers and its powers" are "derived from a strict construction of the [c]onstitution and implementing statutes" (quoting *Com. Life Ins. Co. v. Wright*, 64 Ariz. 129, 139 (1946))). Thus, although Burns was empowered by section 4 to enforce his investigative efforts, he could not force the Commission to assist him by granting his motions.[2] And no matter how tightly the majority squints, the other commissioners' refusal to compel APS and Pinnacle West's compliance with Burns' subpoenas did not "effectively quash[]" those subpoenas. *See supra* ¶ 13.

**¶48**　　　　Second, Burns' subpoenas and requests were not, in fact, an inspection or investigation authorized by section 4, but instead they formed part of a contested rate case subject to Commission authority. The Arizona Constitution grants the Commission, not individual commissioners, "full power" to prescribe just and reasonable utility rates (except as to towns and cities). *See* Ariz. Const. art. 15, § 3; *see also Johnson Utils., L.L.C. v. Ariz. Corp. Comm'n*, 249 Ariz. 215, 221 ¶ 21 (2020) (describing the Commission's ratemaking authority as plenary and exclusive). This "full power" includes directing "the timing, procedure, or methods the Commission uses in calculating rates." *See id.* at 222 ¶ 25. Also, subject to statutory or constitutional restraints, the Commission, not individual commissioners, has full authority to establish procedures for prescribing rates and to preside over proceedings initiated thereunder. *See* Ariz. Const. art. 15, § 6

---

[2] What can an individual commissioner do when a publicly owned corporation or a PSC refuses to comply with inspection and investigation requests? Because section 4 does not direct how an individual commissioner can compel enforcement with a subpoena or other inspection request, and no statutes or Commission rules otherwise apply, an individual commissioner's only remedy is to seek declaratory and injunctive relief from the superior court. *See* §§ 12-1831 to -1846. The court can then resolve any disputes between the commissioner and the targeted company and enter appropriate orders. *See Polaris Int'l Metals Corp. v. Ariz. Corp. Comm'n*, 133 Ariz. 500, 506 (1982) ("Courts must have the power to curb administrative investigations in appropriate instances."). The Commission as a whole is left out of the matter. Burns filed such a lawsuit with the superior court, which nevertheless required him to first ask for relief from the Commission. As explained hereafter, this was not error because Burns' requests were not part of a solitary investigation but instead formed part of a rate case.

(empowering the Commission, absent statutory directives, to promulgate rules and regulations to govern proceedings pending before it); *see also Johnson Utils.*, 249 Ariz. at 227 ¶ 52 (recognizing that Commission authority is subject to judicial review). The Commission has exercised this authority by promulgating rules of practice and procedure for rate cases. *See* R14-2-103, -105; R14-3-101 to -113. As the majority suggests, *see supra* ¶ 33, these rules govern contested cases before the Commission but do not apply to investigations by the Commission or individual commissioners.

**¶49** By filing his motions, Burns did not "inspect and investigate" as authorized by section 4. Instead, he participated in the rate case by issuing discovery requests through subpoenas and seeking rulings from the ALJ and the Commission to enforce his individual determination of what was relevant and admissible in the rate case. Had he issued his subpoenas in his 2015 docket or opened another docket for investigatory purposes while the rate case was pending, I would agree that the other commissioners had no authority to interfere with his efforts to investigate APS and Pinnacle West's spending. But section 4 did not authorize him under the guise of an "investigation" to hijack a contested rate case involving numerous parties that properly followed procedures laid out by the Commission under its constitutional authority. *See* Ariz. Const. art. 15, § 6. In short, the Commission did not interfere with Burns' investigation; it properly invoked its quasi-judicial powers in the rate case to rule on Burns' motions. *See Sun City Home Owners Ass'n. v. Ariz. Corp. Comm'n*, 252 Ariz. 1, 5 ¶ 17 (2021).

**¶50** The majority's opinion has lasting consequences that both violate the constitution and leave confusion, and potentially chaos, in its wake. Now individual commissioners can compel the Commission to enable and enforce their inspection and investigation efforts, despite the plain language of section 4, which does not direct that result. Also, an individual commissioner, under the pretext of inspecting and investigating, now can determine what discovery is permissible in rate cases, despite section 3, which explicitly gives the Commission as a whole full power to make those decisions. It remains uncertain whether an individual commissioner may be permitted to insist that certain witnesses be called and questioned at a rate case hearing, as Burns argues is within his constitutionally bestowed investigatory right. Regardless, it is not difficult to imagine that the flow in rate cases could quickly enter choppy waters,

particularly if individual commissioners exercise their investigatory powers in conflicting ways.

**¶51**      For all these reasons, although I agree with much of the majority's analysis, I respectfully disagree that the Commission here prevented Burns from exercising his investigatory powers under section 4. I would therefore affirm the superior court's judgment.